THE ILLINOIS CENTRAL RAILROAD COMPANY

v.

CHARLES ROSS, BY NEXT FRIEND.

*Railroads—Trespass—Master and Servant—Malicious Assault by Serv-
ant—Flagman—Sec. 99, Chap. 114, R. S.—Scope of Employment—Use by
Public of Railroad Right of Way—Personal Difficulty—Damages, Vin-
dictive and Actual.*

1.   A master is liable in damages, vindictive as well as actual, for a tor-
tious act done by his servant, within the scope of his employment and in
good faith with a view to the furtherance of his master's business.

2.   By Sec. 99, Chap. 114, R. S., a flagman's duties are limited to his
crossing, and do not extend to the right of way beyond, unless the same  is
actually in use as and for a crossing.

3.   A flagman should take the necessary steps to prevent an injury  to
another from trains and the like, although it requires him to leave his post
of duty, unless by so doing more serious consequences would be apt to
arise.

4.   Flagmen can not, by any action of their own, extend the scope of their
duties.

5.   A master is not liable for his servant's tort growing out of acts within
the scope of the employment, when such tort is separated from all that pre-
ceded it, and is clearly distinguishable as to time, motive and object, and is
on purely personal account.

6.   In an action of trespass brought to recover damages from a  railroad
company for an alleged malicious assault by one of its employes, this court
holds that the altercation leading up to the same was of a personal character,
and that it was entirely inconsistent with, and outside the scope of, the
employment.

[Opinion filed June 27, 1889.]

APPEAL from the Circuit Court of McLean County; the
Hon. OWEN T. REEVES, Judge, presiding.

Messrs. WILLIAMS & CAPEN, for appellant.

Where the master owes no duty to the injured party, and
his liability only arises as a legal conclusion from the relation
of master and servant, he is not liable for his servant's malicious
trespass or criminal act, where such servant in performing such

act has not as his motive the furtherance of the master's business.  Wright v. Wilcox, 19 Wend. 343; Mali v. Lord, 39 N. Y. 381; Vanderbilt v. R. T. Co., 2 Id. 479; Sanford v. Eighth Ave. R. R. Co., 7 Bos. 122; Croft v. Alison, 6 E. C. L. 614; N. & C. Ry. Co. v. Starnes, 9 Heisk. 52; McKeon v. Citizens' Ry. Co., 42 Mo. 79; Isaacs v. Third Ave. Ry. Co., 47 N. Y. 122; Douglass v. Stephens, 18 Mo. 362; Moore v. Sanborne, 2 Mich. 519; Dane's Abr., Chap. 59; Bacon's *Ib*., "Master and Servant;" Story on Agency, Sec. 456; Snedgrass v. Bradley, 2 Grant's Cas. 43; Cox v. Keahey, 36 Ala. 340; DeKamp v. M. & M. Ry. Co., 12 Ia. 348; Cleveland v. Newsom, 45 Mich. 62; Wood v. Detroit C. S. Ry. Co., 52 Id. 402; Angell on Carriers, Sec. 604; Angell & Ames on Corp., Sec. 388; Story on Bailments, p. 266; 2 Hill. on Torts, 524; Ewell's Evans on Agency, *489.

The leading Illinois cases, treating of the general doctrine of liability of master for torts of servants to third persons, are Johnson v. Barber, 5 Gilm. 425; Fuller v. Voght, 13 Ill. 277; Moir v. Hopkins, 16 Id. 313; Oxford v. Peters, 28 Id. 434; C. & E. I. Ry. Co. v. Flexman, 103 Id. 546; Arasmith v. Temple, 11 Ill. App. 39; Keith v. Lynch, 19 Id. 574.

Where the authority given to the servant only authorizes the employment of usual and lawful means, the master is not liable for illegal and criminal acts on the part of the servant. Crocker v. N. L. & C. Ry. Co., 24 Conn. 249; Noyes' Maxims, Chap. 44; Lyon v. Martin. 8 A. & E. 512; Poulton v. L. S. & W. Ry. Co., L. R., 2 Q. B. 534; Fraser v. Freeman, 43 N. Y. 566; Moore v. Sanborn, 2 Mich. 519; Foster v. Essex Bank, 17 Mass. 479; Thames S. S. Co. v. H. R. Ry. Co., 24 Conn. 40; Cooley on Torts, 535, 536.

To render a master liable for an act done by the servant, that act must pertain to the particular duties of the employment, within the scope of that employment, and while the servant is *bona fide* trying to execute one of the duties for which he is employed.  Towanda C. Co. v. Herman, 86 Pa. St. 418; Stevens v. Woodward, L. R., 6 Q. B. Div. 318; Keith v. Lynch, 19 Ill. App. 574; C., B. & Q. Ry. Co. v. Casey, 9 Ill. App. 632; and cases *supra*.

A servant having authority over a particular piece of land, has no authority to commit a trespass upon other land, and the master is not liable if he does.    Oxford v. Peter, 28 Ill. 434; Ewell's Evans on Agency, 490; Bolingbroke v. Swindon, L. R., 9 C. P. 575; Barwick v. Eng. J. S. Bank, L. R., 2 Ex. 259; Lyon v. Martin, 8 A. & E. 512.

Whether or not Tucker was acting within the scope of his employment in committing the assault complained of, was a question of fact for the jury, and it was error for the court to assume that fact proven in its instructions.    I. C. Ry. Co. v. Zang, 10 Ill. App. 594; Chicago v. Bixby, 84 Ill. 82; Adams v. Smith, 58 Id. 417; Small v. Brainard, 44 Id. 355; M. S. & N. I. Ry. Co. v. Shelton, 66 Id. 424; Amer. Ins. Co. v. Crawford, 89 Id. 62.

Where the duties of the servant are prescribed by law, his employment simply contemplates the exercise of such powers as the law confers upon him, and the master is not liable for an illegal and unwarranted act.    Wood on Master and Servant, p. 547; Allen v. London Ry. Co., L. R., 6 Q. B. 65.

Messrs. JOHN T. LILLARD and JAMES S. EWING, for appellee.

An instruction which charges the jury that if plaintiff has proven his case as charged in his declaration he is entitled to recover, where there is no plea of special affirmative defense, is a form of instruction approved by our Supreme and Appellate Courts.    City of Bloomington v. Tebbals, 17 Ill. App. 455; Miller v. Balthasser, 78 Ill. 302; O. & M. Ry. Co. v. Porter, 92 Ill. 437.

Even if an instruction of a series is faulty, yet if its defect is fully explained by others of the series, on the same side, or on the opposite side, the error or fault will be cured and will not reverse.    C., B. & Q. R. R. Co. v. Warner, 123 Ill. 42; Spies v. People, 122 Ill. 1; Syllabus, 44, 45; N. L. Packet Co. v. Binninger, 70 Ill. 571; St. L., V. & T. H. Ry. Co. v. Funk, 85 Ill. 460; Belt v. People, 97 Ill. 461; Lawrence v. Hagerman, 56 Ill. 70; T. W. & W. Ry. Co. v. Ingraham, 77 Ill. 309; I. C. R. R. Co. v. Swearingen, 47 Ill. 206.

A master is liable for the torts of his servant, committed by his authority, express or implied; and in most litigated cases such authority is not express, but is implied from the nature of the employment and the duties incident to it. "It is not necessary that the servant was acting under the master's orders or directions, or that the master knew the servant was to do the particular act that produced the injury in question. It is enough if the act was within the scope of his employment, and if so, the master is liable, even though the servant acted wilfully, maliciously, and in direct violation of his orders." Wood's Master and Servant, Secs. 307 and note; 282 and note; 283, 285, 286, 287, 288, 295, 298; N. W. R. R. Co. v. Hack, 66 Ill. 238; T. W. & W. R. R. Co. v. Harmon, 47 Ill. 298; C., B. & Q. R. R. Co. v. Dickson, 63 Ill. 151; L. S. & M. S. R. R. Co. v. Brown, 123 Ill. 162; C. C. Ry. Co. v. McMahon, 103 Ill. 485; Keedy v. Howe, 72 Ill. 136; C., B. & Q. R. R. Co. v. Sykes, 96 Ill. 175; C., M. & St. P. Ry. Co. v. West (Ill.), 17 N. E. Rep. 788; Hewitt v. Swift, 3 Allen, 420; Hawes v. Knowles, 114 Mass. 518; Jackson v. S. A. R. R. Co., 47 N. Y. 274; Quinn v. Power, 87 N. Y. 535; Rounds v. D., L. & W. R. R. Co., 64 N. Y. 129; Cosgrove v. Ogden, 49 N. Y. 255; Henrich v. Pullman Pal. Car Co., 20 Fed. Rep. 100; P. C. & St. L. Ry. Co. v. Kirk, 1 N. E. Rep. 849; Howe v. Newmarch, 12 Allen, 49; Mott v. Consumers' Ice Co., 73 N. Y. 543; E. & T. H. R. R. Co. v. McKee, 99 Indiana, 519, and other cases there cited.

When the servant of a railroad corporation, or company, acting within the scope of his employment, injures the person or property of another, and in so doing acts wilfully, maliciously and in an aggravated manner, the corporation, or master, is liable, both for compensatory and for exemplary damages; not only when some contractual obligation or public duty was owing to the injured party, but as well when the injured party was a trespasser, and an excess of malicious force or violence was used against him. T., W. & W. R. R. Co. v. Harmon, 47 Ill. 298; I. & St. L. R. R. Co. v. Cobb, 68 Ill. 53; C., B. & Q. R. R. Co. v. Bryan, 90 Ill. 126; Donnelly v. Harris, 41

Ill. 126; Singer Mfg. Co. v. Holdfodt, 86 Ill. 455; I. C. R. R. Co. v. Sutton, 53 Ill. 397; I. & St. L. R. R. Co. v. Ogle, 92 Ill. 353; Jones v. Jones, 71 Ill. 562; McNay v. Stratton, 9 Ill. App. 215; Denver & R. G. Ry. Co. v. Harris, 122 U. S. 597; Barry v. Edmunds, 116 U. S. 550, and cases cited; Hawes v. Knowles, 114 Mass. 518; Kibb v. Youmans, 20 Hun (N. Y.), 123; Atlantic & G. W. Ry. Co. v. Dunn, 19 O. St. 162; Goddard v. G. T. Ry. Co., 57 Me. 202; Hopkins v. A. & St. L. R. R., 36 N. H. 9; Wood's Master and Servant, Sec. 323; Hanson v. E. & N. A. Ry. Co., 62 Me. 84; Phila. & C. R. R. Co. v. Larkin, 47 Md. 155; Perkins v. Mo. & C. Ry. Co., 55 Mo. 201; Vicksburg & C. Ry. Co. v. Patton, 31 Miss. 156; N. O. & C. Ry. Co. v. Burke, 53 Miss. 200; N. O. & C. Ry. Co. v. Hurst, 36 Miss. 660; Boetcher v. Staples, 27 Minn. 308; Barnes v. Martin et al., 15 Wis. 240; K. P. Ry. Co. v. Kessler, 18 Kans. 523.

PLEASANTS, J.   This was an action of trespass, brought by appellee against appellant and John Tucker.   The declaration as originally filed contained three counts, charging that said Tucker, and the company by him as its flagman, at the crossing of its road and Jefferson street in Bloomington, in removing the plaintiff from its tracks and right of way at or near said crossing, maliciously assaulted and beat him.   It alleged, in general terms, that plaintiff was " trespassing " on the company's grounds, and that Tucker, in removing him, was acting in the line of his employment, but neither of the counts averred any express authority from the company to remove him, or set up any particular fact from which the law would imply it.   Yet the court overruled a demurrer to them, and gave the plaintiff leave to file additional counts, which differed from the others only in stating the wrong as consisting in the use of unnecessary force.

The plea of not guilty was filed, and thereupon the declaration was so amended, by leave of court, as to dismiss the suit as against the defendant Tucker.   On the trial plaintiff obtained a verdict for $2,500 damages, which the court refused to set aside, and from the judgment thereon this appeal was taken.

I. C. R R. Co. v. Ross.

The statute provides that "in all cases where the public authorities, having charge of any street over which there shall be a railroad crossing, shall notify any agent of * * * the corporation * * * that a flagman is necessary at such crossing * * * it shall be the duty of such railroad company to place and retain a flagman at such crossing, who shall perform the duties usually required of flagmen; and such flagman is hereby empowered to stop any and all persons from crossing a railroad track, when, in his opinion, there is danger from approaching trains or locomotive engines;" and further, that in such case the railroad company "shall have the right to erect and maintain, in the highway or street crossed, a suitable house for the shelter of such flagman." Starr & C. Ill. Stats., Chap. 114, Sec. 99.

An ordinance of the city of Bloomington had provided that it should be the duty of all railroad companies, within sixty days after notice by resolution of the city council so to do, to place and maintain a flagman at any of their street crossings, whose duty was thereby defined to be "to signal persons traveling in the direction of any or either of said crossings, and warn them upon the approach of any locomotive engine or car, of impending danger."

Before the occurrence of the injury here complained of, the city council, by resolution duly passed, required the I. C. R. R. Co. to place and maintain a flagman at the crossing of Jefferson street with the line of its road; and the company had therefore stationed said Tucker as flagman at said crossing, without any express direction as to the scope of his duties, and erected in the street there, a suitable house for his shelter.

Jefferson street runs east and west. The next parallel street south is Washington, and the next to that is Grove. The tracks of the company crossed these streets at nearly a right angle. Its right of way through the blocks between them extended a considerable distance on each side beyond the tracks, and was uninclosed. At each of these crossings a flagman was stationed. On Jefferson street, at the crossing, there were laid two tiers of heavy plank for the passage of

vehicles across the rails, the outer ends of which were within eight or ten feet of the lines of the street, which, however were not there defined by buildings or other structures.

It appeared from the evidence that the plaintiff, then a lad of the age of thirteen years, lived with his parents, two blocks north of Jefferson street, near the railroad tracks, and was strong, active and intelligent for his age. He had been in the habit of playing with his companions upon the company's right of way in the neighborhood. Near the Jefferson street crossing they had frequently indulged in the game of "duck on the rock," so-called, in which a smaller rock is set upon a larger one and others are thrown or pitched at it from a base line. At times the duck had been so placed that the rocks thrown at it would go upon the street, whence the players would take them to throw again. On several occasions the flagman had removed these rocks and remonstrated with the boys. Some ten days before the injury here complained of, his watchhouse had been bedaubed in the night-time, probably by some of these boys, and as an expression of their view of the manner of these remonstrances.

On the occasion in question—in the afternoon of October 12, 1887—upon returning to his crossing after a brief necessary absence he found a number of them on the right of way south of Jefferson street. Whether they had ceased to play and had themselves removed the rocks from the street, or were then engaged in it and he removed them, is not entirely clear from the evidence. But it appears that before saying anything to them he went up to plaintiff, took him by the collar, and charged him with daubing the watchhouse, which plaintiff denied. Tucker replied that a boy named had told him so, and thereupon shook him and pushed or kicked him down. The boy, rising, with a stone in his hand which he had been using in the play, or then first picked up, cursed and threatened him. Tucker again approached him in an angry manner, and the boy, backing off, motioned as if intending to throw in defense. Tucker then turned away and the boy followed him, still threatening. These demonstrations—alternate advances and retreats by each—were repeated several

I. C. R. R. Co. v. Ross.

times. A brief parley ensued, and when Tucker turned to go back to his station on the crossing, the plaintiff gave him a parting curse, said he would get even with him yet and called him a son of a bitch. On the instant Tucker turned again and chased him in a southeasterly direction, and finding the distance between them widening, picked up a lump of slaty coal twice as large as a man's fist, and hurled it with great force, striking plaintiff between the shoulder blades and knocking him down senseless. After a few minutes the boy recovered consciousness, arose and went to his home. He was confined to bed and house for several weeks under treatment by a physician, and the evidence tends to prove a permanent injury to his spine.

For a trespass committed by its servant a corporation may be liable for vindictive as well as actual damages, upon its authority to commit it implied from its relation as master; and it may be so liable, even to one who is himself a trespasser. But to make it so, the tortious act must be actually within the scope of the servant's employment, and done in good faith in the interest of the master. This liability rests upon the reason that in contemplation of law the master is present and does the act voluntarily, though by the hand of the servant. Being so present, with the right to control the servant in respect to it—that is, to forbid it, or to require it, and to direct and control as to the manner of doing it—the master should be responsible for it as done. If it be an act in respect to which he has no such right, as between him and the servant, and by virtue of their contract and relation, there would be no reason or justice in holding him responsible for it. Our views upon this subject were stated in the recent case of The Springfield Engine & Threshing Co. v. Greene, 25 Ill. App. 116, 117, to which and the cases there cited, we here refer without further repetition.

The supposed cause of action here relied on was the striking of plaintiff with the missile mentioned; and the right to recover depends upon the question whether that act was impliedly authorized by the railroad company; in other words, whether it was within the scope of Tucker's employment, and

done by him in good faith for the benefit of the company. That is the decisive question in the case.

It appears that the whole transaction—the altercation and assaults—occurred on the company's right of way between Jefferson and Washington streets, but none of it on any street nor on any railroad track. Appellant insists that this was beyond the territorial range of his duties, and therefore not within the scope of his employment.

Appellee claims that flagmen at street crossings usually give attention to the tracks and right of way half way to the next crossings on each side—for that purpose dividing the intervening territory between themselves; and some proof was introduced to show that such was the fact at the crossings mentioned in Bloomington, and also in some other cities, but none that such attention was " required" of them anywhere. No authority directly in point has been cited, nor is there any within our knowledge; but the language and the reason of the statute would seem to limit his duties to the crossing, and there, as a rule, he should remain. Where the street is so bounded by structures up to the right of way that the crossing can be made only within its lines, we think his duty is limited territorially by those lines; but where it is not so bounded, and adjoining land is actually used by the public and crossing made thereon, his duty and authority are also extended to cover the ground so used. And if he should see beyond those limits a dangerous obstruction upon the track, or animals or persons about to go upon it who were apparently unaware or insensible of the danger or incapable of taking due care for their safety, and his action were necessary in order to avert such danger, and no more important and urgent occasion required him at the time to remain at his place on the crossing, undoubtedly he ought to remove that obstruction, or to do whatever would be necessary, with respect to such animals or persons, to prevent the threatened injury; but this would be a moral obligation only, growing wholly out of his relations as a man, and so important and urgent as to override or suspend for the time that of his contract to be at his place on the crossing. While this would be the duty of any

other person having like knowledge, ability and opportunity, it would perhaps be more especially that of an employe of the railroad company, by reason of his special relation to it, though not more so of a flagman than of any other employe. We are further of opinion that flagmen stationed at different street crossings can not, by any agreement or other voluntary action of their own alone, extend the area or scope of their duties. The statute imposes only such "as are usually required of flagmen," and confers no greater or other right or power than is usually required for their performance, together with the special authority to stop persons in the cases therein prescribed. And if the mere fact that a flagman has actually performed, with more or less frequency, and in view from a station-house, other acts than those mentioned in the statute, would charge the railroad company as requiring or authorizing his performance of them, there is no evidence that any flagman of this or any other company ever assumed, for any reason, to exclude or remove anybody from such grounds as these.

This suggests another question of law fairly arising upon this record, though not distinctly raised by counsel. As already observed, this was uninclosed ground in a block between streets of a city. It has been repeatedly held that a stranger to the railroad company has no right to be upon its track or even its inclosed right of way, except at a crossing: I. C. R. R. Co. v. Godfrey, 71 Ill. 500; Same v. Hetherington, 83 Ill. 510; Blanchard v. L. S. & M. S. Ry. Co., 126 Ill. 416. But in I. C. R. R. Co. v. Hamer, 72 Ill. 347, the court seems to make a wide distinction between such grounds, and the uninclosed right of way in cities, towns and villages. As to the latter, it is there said, "they are places where persons may resort without permission," for purposes in which the company may have no interest; that they "must be kept open to public use to a limited extent;" that as to them the right of the railroad company is "subject to that of the public to use the same in a reasonable and proper manner;" and that by the general use to which they are appropriated "they are made *quasi* public;" by which we understand, grounds open to the

use of the public in any natural or proper way, not interfering with the special rights of the company therein. Whether this public right is independent of the company or derived from its implied license, might be material in some cases—as where the company had expressly forbidden its exercise or attempted to revoke such license—but not here; for we apprehend that in neither case would it be contended that the flagman was authorized by his employment as such, to represent the company in that behalf, and upon his own judgment and of his own will to revoke such license, or to forbid or forfeit such use, either as to the public generally or any individual. At the time here in question the public were in the actual enjoyment and exercise of such right in these grounds. There had been no prohibition or attempted revocation by the company, or by its authority. And yet the theory of appellees' case, as clearly appears from the additional counts and from the argument here, is that Tucker was endeavoring in good faith, on behalf of the company, to remove the boy beyond the entire right of way, and that the wrong consisted solely and wholly in the excessiveness of the force he used for that purpose; and the question here suggested is upon his authority, in view of the character of these grounds, so to remove him, even in good faith and on behalf of the company, by any force whatever, against his will.

It can not well be urged, upon any evidence in this record, that such removal was necessary or appropriate to the performance of any other duty of the flagman arising upon anything the appellee was then doing or threatening, or in danger of doing. He was not on any of the tracks, nor going nor threatening to go on any, nor otherwise interfering with any legitimate use by the company of its right of way there. If he had previously so interfered, it was not with any such intention, and he had entirely ceased and desisted. Nor was he in such danger to himself and so ignorant of it and unable to take care of himself, as to justify his removal on that ground. He knew all the dangers of the place as well, and was as able to avoid them as a full grown man; and if he had been as able to defend his person and rights, it is morally cer-

tain that for anything he had previously done, Tucker would not have presumed to tell him to leave, much less have ventured to compel him by force.

For the reasons above indicated we are inclined to the opinion that as to the tortious act itself and the place of its performance, the flagman was beyond the line of his employment and of the authority implied from it.

But aside from these questions of law, the clear ground of fact on which we think the judgment should be reversed is, that the trespass complained of was not committed by him as flagman or with any reference to the business, property, rights or interests of appellant.

His own account of it is as follows: "When I came back they were playing there, and I went up to Ross and asked him what made him daub mud on the watchhouse. He said he didn't do it. I said, 'George Dukes told me you and he did, and that he oughtn't to do it.' I got him by the collar and he jumped out of my hands, and the rail tripped him up and he fell down. He had a stone in his hand. I said, 'you had better not hit me with that.' He followed me around the east track. I was going back to my shanty, and as I went back, I said, 'you must not strike me with that stone.' I would go a step, and he would follow me. When I would advance a step or two he would go back. He followed me pretty near to the crossing, near the telegraph pole, and made three or four motions at me, and he says, 'I will strike you, you son of a bitch.' That made me mad and I picked up a piece of coal, and threw at him and hit him." On cross-examination he said, "I threw it at him because I was excited from what he said to me. I didn't like to be called a son of a bitch."

Thus it is shown he set up no claim or pretense, that by this act he was attempting, or supposed he was attempting, to discharge any duty to the railroad company, but that it was done entirely on his own account. And upon this point the testimony of the plaintiff himself is in substance the same, and that of every other witness to it is entirely consistent with it. There is none to the contrary. We think it clear that on Tucker's part, the altercation and all action growing out of or

connected with it had ceased, and was resumed instantly and only upon the application of the offensive epithet. The finding of the jury that it was done in the line of his employment, as flagman, and for the company, was wholly unsupported.

It is a just inference from the evidence, that had plaintiff been a man, Tucker would have pocketed the affront, as being purely personal to himself and which he could therefore treat as he might see fit, or else there would have been a fight made by him on purely personal grounds, with no pretense of a purpose to remove a trespasser from the company's right of way, or accomplish anything else in its behalf. And with such a fight the company would have had no right, as master, to interfere. It owed plaintiff no protection, nor could it, as master, require its servant to submit without resentment to insult from such a person. It might, indeed, for the act of so fighting, as for many others having no relation to his employment, such as beating his wife at home, rightfully discharge him from its service; but not because it was in violation of his duty to the company, nor by virtue of any right derived from their contract; that plaintiff was only a boy, and the fight therefore all on one side, does not affect the principle.

It might be more plausibly claimed, that the first assault on the plaintiff was made, in part at least, in the interest of the company. But we think even that was not within the scope of Tucker's authority. It was no part of his duty to chastise anybody for a trespass on the company's property, ten days after its commission. Besides, the record contains no evidence that plaintiff was the trespasser.

But, as already observed, the proof is clear, that before he threw the coal Tucker had done and ended all that he supposed to be his duty or intended to do on account of anything the plaintiff had done affecting the company. He had actually turned away from the scene of the difficulty and was going back to his place on the street, without any attempt or any show of purpose to remove anybody from these grounds, when the new provocation, having no relation to the company or any of its affairs, induced the wrongful act in question. Manifestly it was not done to clear the right of way, nor

otherwise in furtherance of appellant's business, but in purely personal resentment of a purely personal affront.

The distinction is quite material between such a case and that of The N. W. R. R. Co. v. Hack, 66 Ill. 238, where the servant had no personal grievance, and the tortious act was naturally adapted to accomplish an object directly within the scope of his particular duties. And so of other cases cited.

Then, if everything previously done by Tucker had been within the line of his employment, and the act in question in fact grew out of it and would not have been done but for what had previously been so done, still, if it was separated from all that preceded, and clearly distinguishable as to time, motive and object, and was on purely personal account of the servant, the company would not be liable for it upon any authority implied from its relation to him.

That such was the character of this act, we think, was abundantly proved, and we find no evidence to the contrary. The court below should, therefore, have set aside the verdict and awarded a new trial. For error in refusing so to do its judgment will be reversed and the cause remanded.

*Reversed and remanded.*