**Paul Horecker, Appellee, v. Pere Marquette Railroad Company, Appellant.**

**Gen. No. 30,141.**

1. MASTER AND SERVANT—*liability of railroad for assault by gatemen.* Where plaintiff went to depot with wife and child and an altercation arose between plaintiff and gatemen as to payment of half fare for child, but plaintiff obtained half-fare ticket and went to superintendent to make complaint, and later met the gatemen in the depot on their way to lunch, held that assault and battery by the gatemen was not within the scope of their employment or duties, and railroad was not liable.

2. APPEAL AND ERROR—*reversal without remanding.* Judgment should be reversed without remanding cause where reversal is

for errors of law which cannot be obviated or cured on another trial.

Appeal by defendant from the Circuit Court of Cook county; the Hon. John A. Swanson, Judge, presiding. Heard in the second division of this court for the first district at the March term, 1925. Reversed.    Opinion filed October 6, 1925.    *Certiorari* denied by Supreme Court (making opinion final).

Glennon, Cary, Walker & Murray, for appellant; Sidney C. Murray and Marvin A. Jersild, of counsel.

Charles C. Spencer, Arthur A. House and Albert Schaffner, for appellee.

Mr. Justice Gridley delivered the opinion of the court.

By this appeal the defendant railroad company seeks to reverse a judgment for $400 rendered against it, after verdict, in an action for damages for injuries to plaintiff occasioned by an assault and battery committed by two of defendant's gatemen, Sheridan and McGrenera, at its passenger depot at Chicago on July 12, 1921. The defense was that at the time of the committing of the assault upon plaintiff the gatemen were not acting within the scope of their employment and were off duty, and, as plaintiff was not a passenger of defendant's railroad and had no intention of becoming such, that defendant was not liable for the injuries which he received. At the close of plaintiff's evidence, and again at the close of all the evidence, defendant moved for a directed verdict in its favor but the motions were denied. Defendant's counsel here contend that the court erred in these rulings and also that the verdict and judgment are against the law.

There is no substantial dispute as to the material facts. Shortly before noon on the day in question plaintiff, accompanied by his wife and young son, went to defendant's depot for the purpose of putting them on board of one of its trains, bound for South

Haven, Michigan. He purchased a ticket for his wife and all went to the proper gate, where the wife's ticket was shown to the gateman, Sheridan. An altercation there occurred as to whether plaintiff should procure a half-fare ticket for the son, resulting finally in plaintiff's purchasing such ticket and putting his wife and son on board the train, which shortly thereafter departed. On his way back through the gate he inquired of Sheridan where the superintendent's office was, saying he desired to make a complaint as to Sheridan's previous conduct. After a further altercation plaintiff went into a room near the gate and made his complaint to the superintendent, and then went into the passenger waiting room of the depot to meet a friend, intending to go home with him. In the meantime the lunch hour of Sheridan and another gateman, McGrenera, had arrived and they left their respective gates, put their ticket punches "in the drawer," and started to go to lunch together, going first into said waiting room. There they met plaintiff and his said friend near the newsstand, which was about 150 feet away from the gate at which Sheridan previously had stood. After certain remarks had been made as to the nature and result of plaintiff's complaint to the superintendent, heated and insulting words followed, which finally resulted in the two gatemen brutally assaulting plaintiff, knocking him down and injuring him. The evidence is undisputed that at the time of the assault the two gatemen were off duty, and that when on duty their only jobs were to inspect tickets at the gate. McGrenera testified: "My job there in the depot was 'gateing trains.' I didn't do anything else, any other work. I guarded the gates for the Pere Marquette Railroad as well as the Baltimore & Ohio, and so did Sheridan." Defendant's station master, Smiley, testified: "I was station master on July 12, 1921. * * * I had two gatemen working for me by the names of Sheridan and McGrenera; their lunch hour

was between 12 and 12:30 in the afternoon; their duties as gatemen were to inspect transportation; that is the only duty they had; they didn't have any police duties.''

In Wood on Master & Servant, sec. 286, p. 552, the author says: ''A master is liable for the act of his servant, done in the course of his employment about his master's business. But he is not responsible for an act done outside of his employment, nor for the wanton violation of the law by him.'' The author further says, sec. 307, p. 585: ''By putting the servant in his place, he becomes responsible for all his acts within the line of his employment, even though they are willful and directly antagonistical to his orders. The simple test is, whether they were acts *within the scope of his employment,*—not whether they were done while prosecuting the master's business, but whether they were done by the servant in furtherance thereof, and were such as may fairly be said to have been authorized by him.'' In 3 Elliott on Railroads (3rd Ed.), pp. 892-95, sec. 1805, in treating of the liability of a railroad company for acts of its employees to *others than passengers,* the author says: ''The general rule is that a master is liable for the wilful acts of his servants if done in obedience to the master's order or within the scope of their employment or line of their duty, but not otherwise. * * * If an employee steps aside from the line of his duty and commits an independent tort on his own account and outside of the scope of his employment the master is not liable therefor. Thus a railroad company is not liable for injuries inflicted by an employee in a purely personal quarrel with one between whom and the corporation there is no connection or privity, nor for an assault by a trainman on one who had been a passenger but had left the train and ceased to be a passenger at the time of the assault.'' In the above quotations from the two textwriters are set forth what is substantially, as we un-

derstand it, the law in Illinois and other jurisdictions. (*Oxford v. Peter,* 28 Ill. 434, 435; *Johanson v. Johnston Printing Co.,* 263 Ill. 236, 240; *Illinois Cent. R. Co. v. Ross,* 31 Ill. App. 170, 182; *Stephenson v. Southern Pac. Co.,* 93 Cal. 558, 561; *Central Ry. Co. v. Peacock,* 69 Md. 257, 262; *Genga v. Director General of Railroads,* 243 Mass. 101, 106; *Kinnonen v. Great Northern R. Co.,* 34 N. Dak. 556, 565; *Roberts v. Southern R. Co.,* 143 N. C. 176, 181; *Turner v. American Dist. Telegraph & Messenger Co.,* 94 Conn. 707, 713; *Bowen v. Illinois Cent. R. Co.,* 136 Fed. 306.) In the *Johanson* case, *supra,* our Supreme Court says: "Outside of the scope of his employment the servant is as much a stranger to his master as any third person, and an act of the servant not done in the execution of services for which he was engaged cannot be regarded as the act of the master. If the servant step aside from his master's business for some purpose wholly disconnected with his employment the relation of master and servant is suspended. The act of the servant during such interval is not to be charged to his master." In the *Bowen* case, *supra,* decided by the U. S. Court of Appeals for the 8th Circuit, the distinction is pointed out, as affecting a master's liability, between an act done by a servant *during* his employment and an act done by him *within the scope of* his employment, and attention is directed to the further distinction to be observed, as to the liability of the master for the wrongful act of the servant, between cases where the relation of carrier and passenger, or of a hotel keeper and his guest, exists, and cases where the master is the proprietor of a business house or railroad station and the person injured by the servant's wrongful act comes upon the premises to transact some matter connected with the master's general business.

In view of the above authorities and the undisputed facts of the present case, we are of the opinion that the defendant railroad company is not liable for the

injuries received by plaintiff in the manner shown, and that the circuit court committed errors of law in refusing on defendant's motions to direct a verdict in its favor and in entering the judgment appealed from, or any judgment, against it. It seems clear to us from the evidence that the wrongful assault of the two gatemen was without the scope of their employment or duties, and, as said in the *Genga* case, *supra,* was committed by them "in a spirit of vindictiveness, or to gratify personal animosity or to carry out an independent purpose of their own"; and that the judgment appealed from should be reversed without remanding the cause. Such action is proper where this Appellate Court reverses a judgment "for errors of law which cannot be obviated or cured on another trial." (*Harty Bros. & Harty Co. v. Polakow,* 237 Ill. 559, 567.)

Accordingly the judgment of the circuit court will be reversed.

*Reversed.*

BARNES, P. J., and FITCH, J., concur.