CASE 10—PETITION ORDINARY—JUNE 18.

# Musick vs. Ray.

APPEAL FROM MASON CIRCUIT COURT.

None of the provisions of the Civil Code authorize the taking of the deposition of a party by his adversary in an action by ordinary proceedings.

A party may take the deposition of his adversary, if he choose to give it, and it will then be treated as any other deposition, but will confer no right on the party taking it to testify for himself in relation to any new matter stated in such deposition. The privilege of testifying in his own behalf is conferred by the Civil Code only when new matter is introduced not responsive to his inquiries, in answers to his interrogatories annexed to his pleading.

Where a party takes a deposition, or makes a cross-examination, and declines to read it upon the trial, it may be read by the other party. So if a party have a witness summoned and sworn upon the trial, but declines to examine him, the other party may examine him. In such case, the deposition, cross-examination, or testimony of the witness, is the evidence of the party who reads the deposition or cross-examination, or examines the witness, and he will not be permitted to impeach him.

TAYLOR & DUKE, for appellant, cited *Civil Code, sections* 673, 170, 636.

DYE & SAVAGE, for appellee, cited *Civil Code, sections* 170, 670, 614, 167, 168, 173, 673.

Musick vs. Ray.

JUDGE PETERS DELIVERED THE OPINION OF THE COURT:

On the 7th day of October, 1857, the appellee executed his promissory note to appellant for $125 25, due one day after date. On the 28th of March, 1858, appellant instituted suit on said note in the Mason circuit court; and on the 30th of April, 1858, appellee filed his answer, in which he alleged that he was a miller by occupation, and in 1852 he was engaged in running a grist and saw mill in Sardis, Mason county Kentucky, which he owned and continued to run for several years; that when he commenced said business he kept his accounts "*in a book made of common writing paper*," and so kept them until some time in the year 1853 or 1854; that during the time he was engaged in said business he and appellant had many business transactions, and that appellant had made a large account with him, commencing the 1st of March, 1852, and running on to the 19th of February, 1853.

"That when his first book was filled with accounts, he purchased a regular account book, to keep his accounts in, and opened an account with appellant upon his new book, but failed to transfer the amount which appellant owed him, as shown by his old book, from the old book to his new one, which account amounted to $164 72; that on the 7th day of October, 1857, when he executed his said note to appellant, they had a settlement, in which they settled an account of $166, which he had charged against appellant on his new book, for sawing, for lumber, meal, &c., credited by $130 which he owed appellant; that he also settled a note for $110 payable in lumber, which he had executed to appellant, and an account which he owed to him; but that the account which appellant owed him, and which was entered in his old book, was, by mistake and forgetfulness, not produced on said settlement, and was not settled, but that appellant at the time and still owes him the same, and that, if he had produced said account which was owing to him by appellant, instead of a balance being found against him the balance would have been in his favor, and that appellant was at the date of said settlement, and still is, justly indebted to him the difference between the amount of said note and his account of $164 72, and for which he asked a

judgment against appellant." He filed the account from his old book as part of his answer, and averred that very soon after said settlement was made appellant removed to the State of Missouri, where he was still residing.

The appellant denied, in his reply, that he was indebted to appellee, or that the account was by mistake, or in any other way, omitted in said settlement, or that appellee had any such set-off against him as he claimed in his answer.

At the April term, 1859, of said court, the record shows that the appellee produced interrogatories, and offered to file them, to the filing of which the appellant objected. The court held the same under advisement, and the cause was continued. The interrogatories are not incorporated in the record, and it does not appear to whom they were propounded, what they contained, or what disposition was made of them—the motion therefore to file them must be regarded as having been withdrawn.

In July, 1859, the appellee took the deposition of appellant, to be read as evidence on the trial, and he was cross-examined by himself or his counsel.

At the August term, 1859, of the court, there was a mis-trial. At the October term 1859, of said court, the appellant moved the court to permit "him to withdraw his *cross-examination* of himself in his deposition," which motion was opposed by appellee, and the court refused to permit him to withdraw said cross-examination, to which opinion he excepted. The appellant's counsel, (as shown by the bill of exceptions,) before either party had announced a readiness to proceed with the trial, informed the court and the counsel for appellee that he did not intend to read, or to rely upon, the testimony of plaintiff given in his deposition upon his cross-examination.

A trial was then had, and, during its progress the appellee read to the jury, as evidence, so much of the deposition of appellant as was taken upon his examination in chief, and then handed the deposition to the attorney of appellant to read to the jury that part taken on his cross-examination, which he declined to read, and again declared his determination not to read it to the jury or to rely upon it as evidence in the case;

the attorney for appellee then read it to the jury himself, and offered the appellee to testify orally in the case, "concerning the new matter stated" in the deposition not responsive to the inquires of the appellee; to this appellant objected, but his objections were overruled by the court, and he excepted. Appellee was then permitted to testify. The trial resulted in a verdict and judgment in favor of Ray, and Musick's motion for a new trial being overruled he appealed to this court.

By *section* 170 *Civil Code*, it is provided, that, in actions by ordinary proceedings, either party may *"annex written interrogatories* to any one or more of the adverse parties to his petition, answer, or reply, concerning any material matter in issue in the action: 1. Where the party interrogated does not reside in the same or an adjoining county. 2. Where the party interrogated is unable to attend court on account of age, infirmity, or imprisonment, or is a female."

By *section* 176, if the party reside in the same or an adjoining county, he may be summoned and compelled to testify, as any other witness; and, by other provisions of the Civil Code, courts have conferred upon them the power to have full and complete answers to interrogatories when propounded.

In this way the right to the evidence of his adversary is secured to a party in actions ordinary, and the mode of reaching it made plain and simple. This right did not exist until the adoption of the Code of Practice, and is an innovation upon the common law, adopted in analogy to the chancery practice, to reach the conscience of the party and to prevent a multiplicity of suits; but these, nor any other provisions of the Code of Practice, according to our understanding of it, authorize the taking of the deposition of a party by his adversary. It is contended, however, that this right is conferred by *sections* 614 *and* 670 *of the Code*.

These sections are found under the title of Evidence, providing for "the mode of taking the testimony of *witnesses*," and are applicable to a class of persons as distinct from the parties to the action as are the officers of the court. A party might at any time take the deposition of his adversary, if he choose to give it, and it would then be treated as any other deposi-

tion, but would confer no right on the party taking it to testify for himself in relation to any new matter stated in such deposition.

If, then, *new matter was stated*, it was not contained in any answers to interrogatories annexed to the answer of appellee, but in a deposition of appellant, voluntarily taken, and which appellee had no legal means to compel appellant to give. The privilege of testifying in his own behalf is conferred by the Code only when new matter is introduced which is not responsive to his inquiries. This is a recent privilege, unknown to the common law, and, if appellee desired to avail himself of it, he could only do so by pursuing the plan prescribed.

In *Burnett & Miller vs. Garnett & Thompson*, (18 *B. Mon.*, 69,) it was held by this court that a defendant was not bound to answer interrogatories propounded to him in the body of the petition ; and if the plaintiff desires to propound interrogatories to him, by which the defendant becomes a witness and his answers to his interrogatories are made evidence, he must pursue the mode prescribed by the Code.

We must conclude, then, that the court below erred in permitting appellee to testify.

Appellee—in order to testify in his own case—when appellant moved the court to permit him to withdraw his cross-examination, opposed the motion, which motion the court at his instance overruled; and after he failed to make appellant read said cross-examination to the jury, read it himself, and was then sworn and testified orally in the case. This evidence was objected to, but the objections were overruled, and the correctness of that opinion is questioned.

If the plaintiff in a suit take a deposition and file it, and upon the trial of the case declines to read it, it has been settled by this court that the defendant has the right to read the deposition. So if a plaintiff have a witness summoned and have him in court and actually have him sworn, but then declines to examine him, and the defendant examines him, whose evidence is it? Is it the plaintiff's or the defendant's? The evidence is not before the jury until the deposition is read,

or the witness is examined, and the party who examines the witness thereby makes him his witness, (*Higden vs. Higden*, 2 *A. K. Mar.*, 42,) and he would not be permitted to impeach him. If the examination in chief in a deposition is to be treated as the evidence of the party who reads it, there is no reason why the cross-examination should not be regarded in the same way. It results, therefore, that the court below erred in permitting appellee to testify.

The court is not satisfied that the statements made on the cross-examination were *new* matter not responsive to the inquires, but as there must be a reversal it is not necessary to decide that question.

Wherefore, for the errors herein indicated, the judgment is *reversed*, and the cause remanded for a new trial and for further proceedings in conformity to this opinion.