## Jonas v. South Covington & Cincinnati Street Railway Company.

(Decided January 15, 1915.)

### Appeal from Campbell Circuit Court.

1. Personal Injuries—Action for—When Question of Negligence one for the Jury.—Where, in an action to recover damages for personal injuries sustained by the plaintiff, there were but two witnesses testifying, the plaintiff's testimony being to the effect that upon his failing to grasp the handle bar of a street car, his injuries were caused by the act of the conductor in catching and holding him by the arm, thereby compelling him to run with the car and when released by the conductor to fall and break his leg; and the testimony of the remaining witness being to the effect that the

conductor did not catch or hold plaintiff until after he had grasped the car and failed to let it go when commanded by the conductor to do so, and that plaintiff's injuries were caused alone by his holding to and being dragged and thrown by the car; the refusal of the trial court to submit to the decision of the jury the question whether plaintiff's injuries were caused by the negligence of the conductor or by his own negligence, was error.

2. Trial—When Verdict Should Be Directed by the Court—When Question of Negligence Should be Submitted to the Jury.—It is the province of a jury to pass upon and decide questions of evidence if the evidence is contradictory or conflicting; but it sometimes becomes the duty of the trial court, even where there is evidence both for and against the party seeking a recovery, to enter a non-suit or direct the finding of the jury. This duty the law imposes on the court when the evidence as a whole fails to show a right of recovery in the party seeking it; but to authorize an instruction as in case of a non-suit, it should appear that, admitting his testimony to be true and every inference that is fairly deducible from it, the plaintiff has still failed to support his claim.

3. Depositions—When and Upon What Conditions They May Be Read by Adverse Party.—Where a deposition has been taken by one party and filed in the cause, his adversary is entitled to use it in evidence, although the party taking it refused to introduce it in his own behalf; but it would be error to permit the reading of a part of such deposition and to refuse to compel the reading of the whole of it, if the reading of the whole be demanded by the other party.

RAMSEY WASHINGTON and HOWARD M. BENTON for appellant.

L. J. CRAWFORD and L. J. CRAWFORD, JR., for appellee.

Opinion of the Court by Judge Settle—Reversing.

This action was brought by the appellant, Frank Jonas, against the appellee, South Covington & Cincinnati Street Railway Company, to recover damages for personal injuries caused, as alleged, by the negligence of a conductor in charge of one of its cars. At the close of the appellant's evidence the court directed a verdict for appellee. This appeal is prosecuted from the judgment entered upon that verdict. Two grounds are urged for a reversal: (1) That the giving of the peremptory instruction directing a verdict for appellee was error; (2) that the refusal of the court to allow appellant to read part of a deposition to the jury, without reading the whole of it, was error.

The facts appear to be few and simple. The appellant, who is sixty-five years of age, and a resident of Newport, this State, boarded one of appellee's cars as a passenger in Cincinnati, for the purpose of returning to Newport. According to his evidence, when the car upon which he was a passenger crossed the bridge spanning the Ohio river between Cincinnati and Covington it stopped near the end of the bridge on the Kentucky side of the river to enable the motorman to go to appellee's ticket office, only a few feet from the railway track, for a drink of water. When the car stopped appellant, who had only a short distance further to go, alighted from it. What then followed can better be told in appellant's own language, which we here quote:

"Well, I got off of the car and had an idea of walking; I thought the car might stop a considerable time, but I had walked no more than about—well, hardly as far as the width of this room, and I seen the car started again, and when I seen that, I put myself in position to catch hold of the handle bar, but, as it happened, I missed getting a hold of it. I didn't have hold of the handle bar and wasn't dragged by the car—that's all a mistake; but the conductor got hold of my left arm and held on to me, and so, if I wanted to or not, I had to run after the car—the conductor made me. It wasn't my intention, though; I never did intend to run after the car, and, well—after plodding along a little bit that way—I forgot now exactly how far it was—maybe a couple of car lengths—then I was afraid my feet would get knocked so badly that they would be crippled up, and I holloed at the conductor to let me go, and, well—when he finally did let me go, I landed so hard that I fell and turned my left ankle. That's all there is to it, gentlemen."

By the fall he then received appellant's leg was broken. The only other evidence appearing in the record is that furnished by the deposition of George M. Jackson, who was a passenger on the car at the time of the accident. He testified as follows:

"The conductor was standing on the rear platform. The car was moving, I should judge, about eight miles an hour. I couldn't state exactly how far the car went—the motorman stopped as quick as he could, about fifty feet. * * * Well, the car stopped at the end of the bridge, at the ticket office. The motorman went off to get a drink or something. The passenger got off and

started to walk, and as the car started again, the man grabbed the car and tried to get on while the car was in motion. The conductor holloed at him to let loose and tried to reach and catch him. The old man fell on the side of the car and fell on the tracks. The car dragged him. The conductor rang for the motorman to stop and the car stopped about fifty feet and backed up and gathered him up and took him to Third and Monmouth streets, to Doctor Bonar.''

From the cross-examination of Jackson we quote the following questions and his answers thereto:

''Q. State exactly where you were on the car; if seated, state what seat you were in? A. I was in the last seat in the rear, left hand side. Q. Did the conductor try to assist Frank Jonas (the man who was injured) on the car? A. Yes. He tried to grab him after he had holloed to him not to catch on the car. Q. Did the conductor catch hold of Jonas? If so, how did he have hold of him? A. He did. He had hold of his arm.''

It will be observed that appellant and Jackson differ in one or two material particulars. The former testified that he did not take hold of the handle bar of the car and was not dragged by the car, but that the conductor got hold of his left arm and held on to him, which compelled him to run along with the car. Jackson testified that appellant did take hold of the car and try to get on while it was in motion, and that the conductor holloed to him to let loose before he reached out and caught him by the arm. Both agree that when the conductor let appellant go he fell to the ground, in doing which he sustained the fracture of the leg. They also agree that after the conductor caught hold of appellant the car ran twice its length before being stopped, but Jackson alone testified that it was running at a speed of eight miles an hour, appellant making no statement as to its speed.

It is insisted for appellant that he was in nowise to blame for the injuries he sustained; but that they were caused by the act of the conductor in catching him by the arm and holding him until he was forced to run with the car and then turning him loose in such a way as to cause him to fall; and that these acts of the conductor constituted negligence for which appellee is liable.

Considered as a whole, appellant's own testimony conduced to prove that while it was his purpose to again

get upon the car as it passed him, he failed to grasp the handle bar and this failure ended his attempt to board the car, which would have moved on, leaving him on the bridge or ground in safety, but for the act of the conductor in catching and holding him by the arm and thereby dragging or compelling him to keep up with the car while in motion, until turned loose under such headway or momentum as to destroy his equilibrium and cause him to fall. On the other hand, according to Jackson's testimony in chief, appellant first put himself in danger by taking hold of the handle bar and attempting to get on the car while it was in motion, upon seeing which the conductor called to him to loose his hold on the car, and then attempted to prevent him from falling, by catching him by the arm, notwithstanding which attempt appellant did fall, when, in obedience to the conductor's command, he released his hold on the car.

If appellant's injuries were sustained in the manner testified by him, they were caused by the negligence of appellee's conductor. Appellant, upon leaving the car, ceased to be a passenger, and his attempt to again board the car as it passed him did not make him a passenger. The car was not then at a point where it was required or accustomed to stop to take on passengers, but had just left the ticket office, where passengers were allowed to get on and off. So, at the time of receiving his injuries appellant was a trespasser; therefore, the conductor was under no duty to render him assistance in getting on the car, but if he saw he was in danger, to use ordinary care to prevent his injuries. It was, therefore, his duty to refrain from catching hold of appellant, if such assistance, under the circumstances, served to increase appellant's danger; and, according to the latter's version of the transaction, the conductor by taking hold of his arm and continuing to hold it, not only increased, but wholly caused, the danger which resulted in his injuries. In this view of the matter the act of the conductor in catching and holding appellant was negligence. On the other hand, if, as Jackson's testimony conduced to show, the conductor did not catch or hold appellant until after he had grasped the car and failed to let it go when commanded by the conductor to do so; that such holding of appellant's arm by the conductor did not produce his injuries, but that they were alone caused by his holding to and being dragged by

the car, it may well be said that they resulted from his own negligence, or that such negligence so contributed thereto that but for same he would not have been injured.

In view of the plea of contributory negligence interposed by appellee's answer and the conflicting character of the evidence, the case should have been submitted to the decision of a jury, under instructions properly presenting the issues between the parties. What is and what is not negligence in a particular case is generally a question for the jury and not for the court. The rule is that where the facts are such that there is room for honest difference of opinion between reasonable men as to whether or not negligence should be inferred, the right to draw the inferences is for the jury. Therefore, whenever it is necessary to determine what a man of ordinary care and prudence would be likely to do in the emergency shown, involving, as it generally does, more or less of inference or conjecture, it should be settled by a jury. A satisfactory statement of the rule in question will be found in C., N. O. & T. P. Ry. Co. v. Rue, 142 Ky., 694:

"It is the province of a jury to pass upon and decide questions of evidence; and especially is this so if the evidence is contradictory or conflicting; but it sometimes becomes the duty of the trial court, even where there is evidence both for and against the party seeking a recovery, to enter a non-suit or d ect the finding of the jury. This duty the law imposes on the court when the evidence as a whole fails to show a right of recovery in the party seeking it; or, to explain our meaning in language employed by this court: 'To authorize an instruction as in case of a non-suit, it should appear that, admitting his testimony to be true, and every inference that is fairly deducible from it, the plaintiff has still failed to support his claim.' Shay v. R. & L. T. P. Co., 1 Bush, 108; Morris' Admr. v. L. & N. R. Co., 22 R., 1593."

It follows from what has been said that the circuit court erred in granting the peremptory instruction directing a verdict for the appellee.

Appellant's second and final contention, that the court's refusal to permit him to read a part of George M. Jackson's deposition to the jury without reading the whole of it was error, is without merit. It appears that

Jackson's deposition was taken by appellee in Los Angeles, California, his place of residence. On the trial and before the introduction of appellant's evidence, appellee's counsel advised his counsel and the court that it would not introduce or read Jackson's deposition. After testifying himself as a witness, appellant offered to read to the jury that part of Jackson's deposition containing the questions asked him on cross-examination and his answers thereto, to which appellee objected, unless he would read the whole of the deposition. The court sustained the objection and ruled that appellant could not read the cross-examination without reading the whole of the deposition. Appellant excepted to this ruling, but read the whole of the deposition.

It appears to have been repeatedly held by this court that when a party takes a deposition and files it, and declines to read it, the adverse party has the right to read the deposition. Musick v. Ray, 3 Met., 427; Weil v. Silverstone, 6 Bush, 698; Sullivan v. Norris, 8 Bush, 519. But we have been unable to find, nor have we been referred to, any case in which the court has passed on the question whether the party has the right to use a part of the deposition taken by his adversary, without introducing it as a whole. In 13 Cyc., 983, it is said:

"The question whether a party has a right to use only a part of the deposition or must introduce it as a whole is one upon which the courts have not been uniform in their decisions. In some cases the courts have allowed the deposition to be read in part, leaving the remainder to be read by the adverse party if he so desires; but the better rule seems to be that a part of a deposition cannot be read and part omitted, but the entire deposition competent and pertinent to the issues involved should be read; and especially is this so where a party introduces a deposition taken in his own behalf. Where a party reads in evidence a part of a deposition taken at the instance of his adversary, he thereby makes it his own testimony to the same extent as if he had taken it, and his adversary is entitled to read the whole."

The foot notes following the above statement of the law contain numerous cases in other jurisdictions holding that it is error to permit the reading of a part of a deposition and to refuse to compel the party reading it to read the whole on demand of the adverse party. State v. Raburn, 31 Mo. App., 385; U. S. Trust Co. v.

Lanahan, 58 N. J. Eq., 796; Miles v. Stevens, 3 Pa. St., 21; Grant v. Pendery, 15 Kans., 236; Kilbourn v. Jennings, 40 Iowa, 473; Norris v. Brunswick, 73 Mo., 256; Hamilton-Brown Shoe Co. v. Milliken, 52 Neb., 116; Barton v. Morris, 15 N. Car., 240.

In view of the foregoing authorities, we think it safe to say that where a deposition has been taken by one party and filed in the cause, his adversary is entitled to use it in evidence, although the party taking it refuses to introduce it in his own behalf; but while this is so, it would be error to permit the reading of a part of a deposition and to refuse to compel the party reading it to read the whole, if demanded by the adverse party. There was no error in the ruling of the trial court requiring appellant to read the whole of Jackson's deposition.

For the reasons indicated the judgment is reversed and cause remanded for a new trial in conformity to the opinion. Whole court sitting.