## Cincinnati, New Orleans & Texas Pacific Ry. Co. v. Rue, By, et al.

(Decided March 10, 1911.)

### Appeal from Jessamine Circuit Court.

1. Evidence—Conflicting Evidence—Duty of Court to Direct Non-suit.—It is the province of the court to pass upon and decide questions of evidence, and especially is this so if the evidence is

contradictory or conflicting, but it sometimes becomes the duty of the trial court, even where the evidence is conflicting, to enter a nonsuit or direct the finding of the jury. This duty the law imposes on the court where the evidence as a whole fails to show a right of recovery in the party asking it.

2. Master and Servant—Relative Duties.—It is a well recognized rule that the master is not responsible for the wrongful act of his servant, unless the act be done in execution of the authority, express or implied, given by the master. Beyond the scope of his employment the servant is as much a stranger to his master as any third person, and the act of the servant not done in the execution of the service for which he was engaged can not be regarded as the act of the master.

3. Railroads—Trespasser on Train—Ejection—Liability.—A freight train does not, as a rule, carry passengers, and any person who rides upon such a train without the consent of those in control of it becomes a trespasser, and may, for that reason, be summarily ejected therefrom. But if the servants in charge of the train in removing the trespasser should use unnecessary force and thereby inflict injury upon him, the master would, in such case, be liable for the injury, because the servant being possessed of the authority to remove the trespasser in a proper manner, his wrongful exercise of such authority, resulting in the injury, would bring the act within the scope of his employment.

N. L. BRONAUH and JOHN GALVIN for appellant.

EVERETT B. HOOVER for appellees.

Opinion of the Court by Judge Settle—Reversing.

The appellee, Jesse Rue, an infant 18 years of age, by his next friend, Joseph Rue, brought this action in the court below against the appellant, Cincinnati, New Orleans & Texas Pacific Railway Company, to recover damages in the sum of $1,800 for an alleged assault and battery committed upon the infant appellee by its servants in charge of a freight train.

It was, in substance, alleged in the petition that while the infant appellee was "upon and about" the freight train the crew in charge thereof, consisting of James Keith, conductor, Thomas Headly and Pink Blair, brakemen, in order to prevent him from riding on the train "did wrongfully, unnecessarily, negligently, unlawfully and maliciously shoot at, assault, beat, bruise and kick the said Jesse Rue; and curse, threaten to kill, injure and mistreat him, thereby causing him great bodily and mental pain and suffering."

The answer did not deny that the crew of the freight train was composed of the persons named, but traversed all other averments of the petition. The trial resulted in a verdict in favor of appellee for $500 damages and judgment was duly entered in conformity thereto. Appellant was refused a new trial and has appealed.

Numerous grounds were filed in support of the motion for a new trial; but those most strongly urged were: 1. That the court did not properly instruct the jury. 2. That the verdict was contrary to and unsupported by the evidence. 3. That the jury should have been peremptorily instructed to find for the appellant. In order to determine whether any of the foregoing grounds merit a ruling from us favorable to appellant, consideration of the evidence appearing in the record will be necessary.

According to the evidence of appellee, furnished mainly by his own testimony, he and two companions, James Coovert and Boone Phelps, both adults, rode upon one of appellant's passenger trains on Sunday, March 27, 1910, from High Bridge, to Lexington and spent the afternoon and evening in that city; there being no night passenger train upon which they could return to High Bridge; at two o'clock on the morning of March 28th, they boarded at Lexington, without the permission of appellant or any of its servants, a freight train going south to High Bridge that they might return to their homes at that place. After getting upon the train they so secreted themselves that their presence thereon did not become known to the train crew. When near Nicholasville, and in eight miles of High Bridge, the freight train in going up a heavy grade became uncoupled and was stopped. When it stopped appellee got off the train on the left side thereof; his two companions got off on the right and remained in hiding during the scenes that followed. Appellee, however, according to his testimony, was less fortunate, for as he walked off down the railroad and beside the track he was seen by Pink Blair, one of the train crew, who started toward him with the remark, "Here he is Tom," at the same time firing a shot from a pistol held in his hand; appellee ran some distance followed by Blair, who again fired the pistol and said: "Stop, you God damn son of a bitch or I'll kill you." Appellee continued to run followed by Blair until he got over a fence and off appellant's right of way, but being in fear of the pistol, he, at Blair's command, per-

mitted the latter to approach him. Blair accused him of uncoupling the train, which appellee denied; Blair, with others of the train crew, who had in the meantime come up, then took appellee back to the train, on the way threatening to deliver him to a peace officer. Upon arriving at the train Blair, and others of the crew, as further testified by appellee, assaulted, kicked and knocked appellee down, after which the train departed for its destination leaving appellee standing near the track. His two companions came out of their place of concealment after the train left and walked with him to High Bridge. They testified that they did not see the train crew assault or strike appellee, as the train separated them from appellee and his assailants and so obstructed the view from their place of concealment as to prevent them from witnessing what occurred; but they heard the pistol shots and some of the crew's abuse of appellee and saw bruises and blood upon his face after they got with him following the departure of the train.

The evidence introduced in behalf of appellant conduced to show that appellee and his two companions had freely partaken of intoxicants while in Lexington, and conclusively proved that their presence on the train was not known to the train crew until the train became uncoupled and was stopped. Indeed, it was admitted by appellee and his companions that their presence on the train was unknown to the crew, and that they rode and were concealed upon a flat car containing an oil tank, which was separated by several box cars from the caboose. Appellant's evidence further conduced to prove that the uncoupling of the train was not accidental, but accomplished by the intentional act of some person on the train, for none of the coupling apparatus of either of the cars at the place of uncoupling was broken or out of repair, and the lever by which the coupling pin of the drawhead of one of the cars was raised and lowered was found in a position which demonstrated that the uncoupling was effected by a person familiar with the only method by which it could be done.

Appellee and his companions on cross-examination denied that they had uncoupled the train and there was no satisfactory evidence that they did so, but the fact that the train had been uncoupled and that appellant's train crew believed it to have been done by appellee, gave occasion for the anger the latter testified they manifested

toward him following his capture by Blair. The testimony of the members of the train crew was in most respects contradictory of that of appellee. Blair testified that upon his going, after the train stopped, to where it became uncoupled, to ascertain the cause of the uncoupling, he discovered appellee who was then leaving the opening in the train where it had been uncoupled; that he called to appellee and he began to run as if to escape, and when he failed to stop at Blair's command to him to do so, Blair, calling other members of the train crew to his assistance, pursued him and fired his pistol into the air to frighten and stop him; whereupon appellee stopped and went to Blair and was taken by him back near the train; that Blair then asked him what he was doing on the train and accused him of uncoupling it, and appellee replied that he was not on the "damn train," and had not uncoupled it, and that Blair was a liar. Blair retorted by calling him another; that appellee then said Blair was a damn liar and put his hand in his pocket as if to draw a weapon, and Blair then struck appellee but did not knock him down; that appellee then started to run, but got his feet entangled in some vines and fell, and then admitted he had been riding on the train, but denied that he had uncoupled it; saying, however, that he had two partners with him on the train and they might have uncoupled it.

Blair's version of what occurred was fully corroborated by his fellow brakeman, Headly, and in large measure by the conductor, Keith, though the latter did not claim to have seen all that took place. It does not appear, however, from the testimony of any of them, that there was a denial of appellee's statement that he was bruised and his face made to bleed. If their account of what took place was the true one, it would seem reasonably apparent that the assault and battery committed upon appellee was the act of Blair alone and that it was done in his necessary self-defense. On the other hand, if appellee's version of the matter was the true one, it would seem equally apparent that he was the victim of a malicious and unlawful assault and battery. It is the province of a jury to pass upon and decide questions of evidence; and especially is this so, if the evidence is contradictory or conflicting; but it sometimes becomes the duty of the trial court, even where there is evidence both for and against the party seeking a recovery, to

enter a nonsuit or direct the finding of the jury. This duty the law imposes on the court when the evidence as a whole fails to show a right of recovery in the party seeking it; or to express our meaning in language employed by this court:

"To authorize an instruction as in case of a nonsuit, it should appear, that, admitting his testimony to be true, and every inference that is fairly deducible from it, the plaintiff has still failed to support his claim." Shay v. R. & L. T. P. Co., 1 Bush, 108; Morris' Admr. v. L. & N. R. R. Co., 22 R., 1593.

As the appellant, after the introduction of appellee's evidence, and again at the close of all the evidence, asked the trial court to peremptorily instruct the jury to find for it and the request was in each instance refused, its counsel contended on the motion for a new trial, and now insists that this ruling of the court was error. This contention rests upon the ground that appellant's train crew, even if they or some of them, unlawfully and maliciously inflicted upon appellee the injuries complained of, were not at the time acting as the servants of appellant, or within the scope of their employment.

It is a well recognized rule that the master is not responsible for the wrongful act of his servant, unless that act be done in execution of the authority, express or implied, given by the master. Beyond the scope of his employment, the servant is as much a stranger to his master as any third person, and the act of the servant, not done in the execution of the service for which he was engaged, cannot be regarded as the act of the master.

In the well considered case of Sullivan v. Louisville & Nashville R. R. Co., 115 Ky., 447, the doctrine under consideration was stated as follows:

"The reason the master is liable for the act of his servant at all is because the servant is acting in that matter in the master's stead and for him. Obviously, if the servant is not acting for the master, he cannot be said to be his representative in that act. So, if the servant is charged by his master with the authority to act in his stead in a given matter the servant's action or his failure to act, as the case may be, is imputed to the master as if it were his own. This general doctrine must be too well known to require now the citation of authority to support it. But where the servant steps aside from his employment and assuming to act, and does act solely on

his own account in a matter which the master has no more connection with than if he were the most complete stranger, it would not be logical or fair to make the master vicariously suffer for it, for in doing that act the servant, so called, was absolutely his own master. Cousin v. Hannibal, et al., R. R. Co., 66 Mo., 572. Or, as it was expressed by Mitchell, J., in Moier v. St. Paul, et al., R. R. Co., 31 Minn., 351. (Quoted with approval in Davis v. Houghtellin, 33 Neb., 582.) In determining whether a particular act is done in the course of the servant's employment, it is proper to inquire whether the servant was at the time engaged in serving his master. If the act be done while the servant is at liberty from the service and pursuing his own end exclusively, the master is not responsible. If the servant was at the time the injury was inflicted, acting for himself and as his own master pro tempore, the master is not liable. If the servant stepped aside from his master's business, for however short a time, to do an act not connected with his business, the relation of master and servant is for the time suspended.''

There was nothing in the evidence that tended to prove that appellant's train crew had any authority, express or implied, to do any of the acts resulting in appellee's injuries, or that such acts were within the scope of any service required by their employment. It goes without saying, although not shown by the evidence, that the train crew had authority to eject passengers from the train and to prevent them from riding thereon, for such authority arose by implication from their being in charge of the train under employment by appellant, the owner. A freight train does not, as a rule, carry passengers, and any person who rides upon such a train without the consent of those in control of it becomes a trespasser and may, for that reason, be summarily ejected therefrom, without unreasonable force, by those in authority. But if the servants in charge of the train in removing the trespasser should use unnecessary or unreasonable force and thereby inflict injury upon him, the master would in such case be liable for the injury, because the servant being possessed of the authority to remove the trespasser in a proper manner his wrongful exercise of such authority resulting in the injury, would bring the act within the scope of his employment. The same would be true if the injury were wrongfully inflicted by the ser-

vant in preventing a trespasser from getting on the train.

Quite a number of cases may be found in which this court, applying the doctrine last announced, held the master liable for injuries wrongfully or negligently inflicted by the servant in ejecting persons from trains. Among these is the case of Smith, By, et al. v. Louisville & Nashville R. R. Co., 95 Ky., 11, in which the plaintiff, an infant, was so injured. In the opinion it is said :

"The company is liable if the servant in the exercise of his authority, within the general scope of his employment and in the line of his duty, uses unnecessary force, or uses it under circumstances or at a time when the consequences ordinarily would be seriously injurious to the person ejected." I. C. R. R. Co. v. West, 22 R., 1387.

Again in Thurman v. L. & N. R. R. Co., 17 R., 1343, we held that although a boy riding on the truss rods under a freight car was a trespasser, the railroad company was liable for injuries received by him while thus riding, if they resulted from his being pushed off by one of the trainmen at a time when it endangered his life, or rendered it probable that he would be injured; and as it was evident from the proof in the case that if violence was offered at all it was at such a time, the only question to be submitted to the jury was whether the trainmen did push the boy off. Williams' Admr. v. Southern Ry. Co., 24 R., 2214.

It will, however, be found that in all these cases the persons injured were upon or being ejected from the train, but in the case at bar appellee's injuries were not so received. He had been a trespasser upon the train before receiving his injuries, but at the time the assault and battery were committed upon him by appellant's servants, if they were committed, he was not upon the train, or attempting to get thereon, and when they inflicted upon him the punishment complained of, the train crew were not engaged in appellant's service or in the apparent scope of their employment. As said in the case of Winnegar's Admr. v. Central Passenger Ry. Co., 85 Ky., 552:

"The general doctrine with reference to master and servant, employer and employe, is, that when the employe committing the injury is not at the time executing the employer's business or not acting within the scope of his employment, the employer is not responsible. If one driving the cars for the corporation should leave the car

and beat or abuse one on the sidewalk, the company would not be responsible. Such an assault could not be said to have been authorized by the company, or part of the driver's employment, nor can it be said that it was done in the course of the employment." Furber v. Missouri Pacific Ry., 20 L. R. A., 354.

In the case of L. & N. R. R. Co. v. Routt, 76 S. W., 513, the plaintiff while standing near a railroad track was struck by a lump of coal thrown by the fireman on one of the defendant's locomotives and injured. In declaring the defendant not liable the court said:

"The evidence shows conclusively that if the injury was done by a servant of appellant, such servant was not at that time acting within the scope of his employment. On the contrary it shows that the servant, purposely and maliciously threw the coal at appellee with the design to injure him, and not from any purpose of protecting the master's property, or otherwise furthering the master's interests. It is difficult to imagine a case where the facts more clearly show that the servant was acting on his own behalf and in no sense for his master."

In Gilliam v. South & N. A. R. Co., 70 Ala., 268, the facts presented by the record were strikingly similar to those of the instant case. In that case the conductor of a railway train stopped his train and, pistol in hand, pursued a boy into his father's house, seized the boy and carried him off on the train. Upon these facts it was held that the railway company was not liable unless it authorized or ratified the conductor's acts. N. O. J. & G. N. R. Co. v. Harrison, 48 Miss., 112; Davis v. Houghtelin, 14 L. R. A., 737.

In Machem on Agency, section 741, we find this statement with respect to the doctrine under consideration:

"The doctrine of the earlier cases was that the master was not liable for the willful, wrongful act of his servant, but the better and more modern rule clearly is, that the mere nature of the act is not the only criterion, but that the most important test is whether the act was done in the course of the employment."

In I. C. R. R. Co. v. Ross, 31 Ill. App., 170, it was held that a railroad company was not liable for an assault committed by its flagman stationed at a highway crossing, where he went outside of the limits of a highway and indulged in an altercation upon the company's right of way from which the assault resulted. Holler v. Ross,

59 L. R. A., 143; Cochran v. C. & M. R. Co., 56 Fed. Rep., 1014; Best v. C. & O. Ry. Co., 14 S. E., 234; Dougherty v. Chicago, M. & St. P. Ry. Co., 114 N. W., 904.

Counsel for appellee relies with apparent confidence upon the case of Robards v. P. Bannon Sewer Pipe Co., 130 Ky., 380; but we are unable to see that the conclusion reached by the court in that case militates in any sense against that reached by us in the case at bar. In that case the only question for decision was whether the petition, to which a demurrer had been filed, stated a cause of action. It was, therein, alleged that a switchman employed by the defendant as a night guard at its brick manufacturing establishment wrongfully and negligently shot and wounded the plaintiff as he approached the property, mistaking him for a burglar or other wrongdoer. It was held on appeal that the petition stated a cause of action and if its averments were established by proof, the master would be liable for the injury inflicted; but such liability was based upon the fact that the watchman, according to the averments of the petition, was by the terms of his employment not only vested with full discretion as to the means to be used in protecting the employer's property, but was expressly authorized to use fire arms in doing so. Therefore, in shooting and wounding the plaintiff, the watchman acted in the exercise of a discretion with which he was clothed and within the scope of his employment, for which reason the master was liable for his act, which was an abuse of discretion, whether committed willfully, negligently or by mistake.

In the case at bar the injuries inflicted upon the appellee resulted from the unauthorized and willful acts of the brakeman, Blair, and perhaps other members of the train crew who followed appellee to where he had fled away from the train, and were inflicted under circumstances which showed that he was not even a trespasser at the time. The acts, therefore, of the trainmen, were not committed for the protection of appellant's property, or in the performance of any duty which they owed it. In other words, such acts were in no view of the case within the scope of the trainmen's employment.

Therefore, in the light of the facts furnished by the record and the authorities referred to, we are constrained to hold that their acts and conduct imposed no liability upon appellant, and this being so, it was clearly entitled to the peremptory instruction asked on the trial.

Whether the evidence appearing in the record in this case would authorize a recovery against the trainmen, it would not be proper for us to say here.

The above conclusion makes it unnecessary for us to pass on the instructions complained of further than to say, they should not have been given, as appellant was entitled to a peremptory instruction directing the jury to find for it. If appellee had sued the members of the train crew he would have been entitled to have the case go to the jury upon his evidence, but the evidence did not warrant the submission of this case to the jury except for the purpose of directing the return of a verdict for appellant.

For the reasons indicated the judgment is reversed for a new trial and proceedings consistent with the opinion.

Whole court sitting.