## Hines, Director General of Railroads v. Walls.

(Decided January 13, 1922.)

### Appeal from Lincoln Circuit Court.

1. Negligence—When Accident May Result From Different Causes—Non-Suit.—If the testimony shows that an accident resulting in injury may have been produced by two or more causes, and that the jury must speculate or guess as to the producing one, and some of which do not constitute negligence on the part of defendant, there is a failure of proof and a non-suit should be directed.

2. Master and Servant—Scope of Servant's Employment.—The master is liable only for the acts of his servant committed in the course or scope of the latter's employment and not for acts of the servant committed by him while not serving the master and outside of the scope of his employment.

3. Master and Servant—Failure of Proof.—Where a hand car upon which plaintiff was riding was derailed by running over the body of another section hand, who, according to the testimony, had either because of his negligent acts fallen, or voluntarily jumped, in front of the car and there is nothing to show which character of act caused the collision, there is a failure to establish liability of the master, since if the servant jumped from the car and there-

by voluntarily putting himself in front of it he was acting outside the scope of his employment.

K. S. ALCORN and JOHN GALVIN for appellant.

L. L. WALKER and GEORGE D. FLORENCE for appellee.

Opinion of the Court by Judge Thomas—Reversing.

The appellee and plaintiff below, Mack Walls, was a man about forty years of age at the time he testified and for more than twenty years had worked for the Cincinnati, New Orleans and Texas Pacific Railway Company as a section hand, but on the 12th day of June, 1919, at the time he sustained the injuries for which he sues, the railroad was operated by Walker D. Hines, Director General of Railroads, the Federal government having taken charge of it under the Federal Control Act. At about 7 o'clock p. m. on the day mentioned plaintiff and his crew were called to remove and clear up a wreck which had occurred about 2 miles south of McKinney, in Lincoln county, and they finished their work about 12 o'clock that night, and the crew of five or six hands, including plaintiff, had started on their return to McKinney when John Bell, one of the section hands who was standing on the front end of the handcar, after they had gotten about four hundred yards from the wreck fell or jumped from the car in front of it when it ran over him and was derailed, causing plaintiff to be thrown from it and he sustained a dislocation of his right elbow. There was no fracture of any of the bones, but for some reason the dislocation was not reduced, which caused the bones to be knitted together, the one beside the other, resulting in a stiff joint. There was also some injury to the wrist joint but not so serious as the one to the elbow.

Plaintiff filed this action against the railroad company and the Director General alleging that they were negligent in permitting the car to be overcrowded and that their servant, John Bell, was guilty of negligence because of which he fell in front of the car resulting in its derailment and the consequent injury to plaintiff, and he sought a judgment for $25,000.00. Separate answers of defendants denied all alleged negligence and contained pleas of contributory negligence and assumed risk. The answer of the railroad company contained the additional plea that it was not operating the railroad at the time but that it was being operated by the Federal government

through its co-defendant as Director General of Railroads. Appropriate pleadings made the issues and at the close of plaintiff's testimony the court sustained a peremptory instruction in favor of the railroad company, but overruled one offered by the Director General, and overruled a similar motion made by him at the close of all the testimony. The jury returned a verdict in favor of plaintiff against the Director General in the sum of $6,600.00. His motion for a new trial was overruled and he prosecutes this appeal, urging for a reversal four grounds, which are: (1), the refusal of the court to sustain defendant's motion for a peremptory instruction in his favor; (2), error in the admission of evidence offered by plaintiff; (3), error in giving and refusing instructions, and (4), excessiveness of the verdict. Because of the conclusion we have reached, it will not be necessary to discuss or determine the merits of grounds 2, 3, and 4, since it is our opinion that ground 1 is well taken.

In his testimony, as well as in the instructions which he offered and which the court gave to the jury, plaintiff abandoned the alleged negligence of the overcrowded condition of the car and planted his right to recover solely upon the ground of the alleged negligence of his fellow servant, John Bell, and unless the testimony is sufficient to sustain that ground or to uphold the verdict of the jury finding it to be true, there was a failure of proof and the motion for a directed verdict in favor of defendant (appellant) should have been sustained. No one testified for plaintiff as to the actions and conduct of Bell at the time of and just preceding the happening of the accident but himself, and his testimony on that point was, that it was a moonlight night and the car on which he was riding started from the wreck about 12 o'clock, there being another one some thirty or fifty yards in front of it, and there were on his car some six or seven hands, some of whom were standing at the rear end working the lever and others at the front end engaged in the same work; that a short distance from where they started the track was down grade and the car moved by its own momentum without the necessity of working the levers, and that when it started down grade Bell, being on the front end of the car with his back in the direction it was going, turned loose of the lever he was working and was looking around over the landscape and moving his body and his feet to some extent when he either jumped or fell from the car; that the place where he fell was between

fifty and one hundred yards from where he let loose of the lever. We copy what he said in his testimony upon the material point, which is: "He (Bell) was standing on the front end of the car when we first started out, a-pulling, and when we run about a hundred yards, he straightened up, was standing up, and turned with his face towards the knobs, and then he turned square around, in place of turning back to his right, where he just had to half-way turn around to get hold of the lever bar, he turned clear around to the left, where he had to turn plumb around to get hold of the lever bar, and when he got his face direct with McKinney, the way he was going, he either fell off or jumped off right in front of the car." On his cross-examination he said: "Yes, sir, in place of turning around—he was gazing towards the knobs, this way (indicating), and in place of turning around to his right, where he had just half-way to turn around to catch hold of the lever bars, he turned around square to his left, where he had to turn plumb around to get hold of them, and when he got his face directly towards the track, towards McKinney, and he just made a—fell off or jumped off." He further testified that: "He was always a-pranking; he was always a pranky kind of negro, John was, and he had started to pull, and he just let loose and got to idling and gazing looking towards the woods." He further testified that the actions and conduct of Bell created no apprehensions in his mind that he would fall or jump from the car which was running about ten miles per hour at the time. It further appeared from his testimony that there was no jolt, jerk or jar at the time Bell left it, nor was the car defective in any part. Bell had left the country and could not be located, which prevented defendant from obtaining and introducing his testimony. None of the evidence introduced by defendant strengthered the testimony of plaintiff as to how the accident happened. On the contrary it tended to show that Bell was not even so active in his movements as plaintiff stated in his testimony.

Under this evidence, which is all there is upon the subject, it is seriously doubted whether the conduct of Bell, as portrayed by plaintiff, was sufficient to create negligence on his part. The only blamable conduct attributed to him by plaintiff was that he looked either to the east or to the west towards the knobs; that he did not stand sphinx-like and motionless on the car, and that he failed to brace himself by holding to some part of it.

As to the latter conduct there is nothing appearing in the testimony to show any necessity for him to brace himself, since the car was moving at a moderate speed, and, as testified to by plaintiff, it was going smoothly and there was nothing to warn him of the necessity of bracing himself. Besides, the testimony shows, without contradiction, that it was customary for the section hands under such circumstances to ride on the car without bracing themselves, and there is nothing to indicate that in so doing those riding thereon were guilty of negligence, and it may not be presumed in a case of this kind under the *res ipsa loquitur* doctrine. Louisville & Nashville Railroad Company v. Allen's Admr., 174 Ky. 736, and Louisville & Nashville Railroad Company v. Campbell's Admr., 186 Ky. 628. Neither are we familiar with any rule of law requiring a section hand while moving to and from his work on a hand car to stand rigidly and motionless as a painted Indian sign in front of a cigar store as plaintiff's theory would seem to demand on the part of John Bell in this case. It would also seem equally as far-fetched to attribute negligence to him because he stood with his face to the front in the direction the hand car was moving, and that instead of turning his body to the right he turned it to the left. There is nothing appearing in the record to show that because it required greater movement on his part in the one case than in the other he incurred greater hazard thereby.

But, waiving that point, and conceding for the purposes of this opinion only that the evidence was sufficient to authorize a finding by the jury that Bell was negligent in his actions and conduct as described by plaintiff, it, notwithstanding, was the duty of the court to sustain defendant's motion for a directed verdict in its favor under the testimony heard upon the trial. It is a firmly settled rule in this jurisdiction and elsewhere that one seeking to recover for negligence must prove it, and that the damages he seeks were the proximate result of that negligence. If the testimony in the case shows that the injury and consequent damages may have been produced by one of two or more causes for only one or more of which defendant was responsible the cause of action fails and no recovery will be allowed. The most recent case from this court applying that doctrine is the Campbell case, *supra,* and in the opinion many other cases from this and other courts are cited.

It will be observed from plaintiff's testimony that upon every occasion when he attempted to describe or to state how Bell got in front of the car he said that "he either fell off or jumped off right in front of the car." If he jumped off the car it was an act of his own volition, or at least it was presumably so. It is sufficient to say that there is no evidence to the contrary, and if he did so intentionally and of his own volition defendant would not be liable for either the consequences to him or to any other person, including plaintiff, a fellow servant, since it is only for acts of the servant performed in the course of his employment that fixes liability upon the master. It is upon this principle that the doctrine of *respondeat superior* and the maxim *qua facit per alium, facit per se* are each rested. If Bell had not been upon the car but standing by the side of the track, though a section hand as he was, defendant would not be liable if he had voluntarily thrown himself in front of the car and caused its derailment; nor would defendant have been responsible if, under the same circumstances, any other obstruction had purposely been thrown by him in front of the car, for the manifest reason that such acts would not have been performed "in the course of his employment." The fact that he was upon the car when he threw himself in front of it, if he did do so, voluntarily by jumping therefrom cannot alter the case, since his act in jumqing from and in front of it would be no more in the *course of his employment* than if he had been off the car by the side of the track and jumped in front of it. Illustrative cases from this court substantiating the above views are: Sullivan v. Louisville & Nashville R. R. Co., 115 Ky. 447; Louisville & Nashville R. R. Co. v. Routt, 25 Ky. L. R. 887; Ballard's Admrx v. Louisville & Nashville R. R. Co., 128 Ky. 826, and Cincinnati, New Orleans & Texas Pacific Ry. Co. v. Wilson's Admr., 161 Ky. 640. The last case cited contains many other cases from this and other courts, as well as text book authorities substantiating the rule. In the Ballard case, *supra,* and some of the others referred to, it is said that the master is not liable for pranks which his servant perpetrates, or attempts to perpetrate, upon either strangers or a fellow servant, upon the ground that while the servant is so engaged he is not furthering the interest of the master and is therefore acting *outside* of the "scope of his employment." As above shown, plaintiff testified that John Bell "was always a pranky

kind of negro" and "was full of pranks." It might be that he attempted to perpetrate one in jumping from the car, and under the doctrine of the cases referred to defendant could not be made liable for the consequences, and the same would be true if he was not engaged in perpetrating a prank but attempted to leave the car voluntarily and for purposes of his own.

It having been proven in the case that Bell produced the derailment of the car either through his negligence causing him to fall in front of it (accepting plaintiff's theory as true), or by his voluntary act in jumping in front of it and if the latter the defendant would not be liable under the doctrine, *supra,* the peremptory instruction should have been given, and the court erred in declining to do so. Other questions not herein discussed are left open as is also the question of the negligence of Bell, which we have assumed only for the purposes of this opinion.

Wherefore the judgment is reversed with directions to sustain the motion for a new trial and for proceedings consistent herewith.