## Wood v. Southeastern Greyhound Lines.

April 16, 1946.

R. L. Vincent and C. C. Adams for appellant.

R. W. Keenon, Fennell & Tucker, and Robert Houlihan for appellee.

OPINION OF THE COURT BY JUDGE SILER—Affirming.

The appellant, Roy D. Wood, sought to recover damages in the sum of $17,500 against appellee, Southeastern Greyhound Lines, resulting from a personal assault committed upon appellant by appellee's bus driver. From a judgment of the trial court sustaining

a general demurrer to his petition, as amended, the appellant now prosecutes this appeal.

The essential and pertinent allegations set up by appellant for his cause of action in his petition and amended petition are in the following averments, viz.: That appellee's bus driver, L. C. Hoskins, was operating one of appellee's busses on U. S. Highway 25 in Grant County, on November 18, 1944; that appellant, while driving his car, attempted to enter U. S. Highway 25 at its junction with Kentucky State Highway 36 at a place called Halfway House, at which time and place appellee's bus driver crowded appellant's car off of the highway; that appellant regained the highway and then proceeded ahead of appellee's bus, thereby producing a continuing controversy for the road, which controversy lasted until both vehicles had traveled about one-fourth of a mile and arrived in the City of Williamstown; that appellant then got out of his car in Williamstown at his place of business and that appellee's bus driver, then and there stopping and leaving his bus in the middle of U. S. Highway 25 before it had reached the regular bus stop, alighted from his bus and followed appellant to his place of business, where he cursed him and assaulted him with his fists and a ticket punch, thereby humiliating him in the presence of many citizens of Williamstown; that appellee's bus driver was, upon this occasion, wearing appellee's uniform for bus drivers and was in charge of one of appellee's busses and was following his regular duties of protecting the passengers on said bus through his customary management and operation thereof; that the controversy, which began at the Halfway House or the junction of Kentucky State Highway 36 with U. S. Highway 25, continued without interruption until the said controversy culminated in the assault and battery committed upon appellant by appellee's bus driver at appellant's place of business in Williamstown; that this driver of appellee was high tempered, vicious and overbearing, all of which was known to appellee, or could have been known to appellee by the exercise of ordinary care. To these allegations, which constitute the sum and substance of the principal averments of appellant's petition, as amended, the court sustained a general demurrer upon the theory that no cause of action had been stated against the appellee.

The determination of whether an employer, such as

this appellee, can be held responsible for damages in tort to a third person, such as this appellant, resulting from some act committed by the employer's servant, such as this bus driver, depends entirely upon a prior determination of whether the servant was acting within the scope of his employment at the time of his tortious act.

A leading case in our own jurisdiction dealing primarily with this very question is that of Newberry Co. v. Judd, 259 Ky. 309, 82 S. W. 2d 359, 362, and in that case we find the following statement of legal principle:

"It is clear the rule of respondeat superior cannot be invoked and the employer be held liable where the action of the employee was motivated by conceptions of personal wrong or the invasion of his private rights. And though there is some conflict of opinion, the trend of the decision is to exonerate the principal where the act was not for the protection of his property or interests, but was to vindicate public justice or to redress an offense against society, or to punish an offender for something already done, although the wrongful act had its origin in some agency relation. 25 C. J. 502; 18 R. C. L. 812; Annotations, 35 A. L. R. 654; Robards v. P. Bannon Sewer Pipe Co., 130 Ky. 380, 113 S. W. 429; 18 L. R. A., N. S., 923, 132 Am. St. Rep. 394; Cincinnati, N. O. & T. P. R. Co. v. Rue, 142 Ky. 694, 134 S. W. 1144, 34 L. R. A., N. S., 200; John v. Lococo, 256 Ky. 607, 76 S. W. 2d 897; Carter v. Howe Machine Co., 51 Md. 290, 34 Am. Rep. 311; Patterson v. Maysville & Big Sandy R. Co., 78 S. W. 870, 25 Ky. Law Rep. 1750; Markley v. Snow, 207 Pa. 447, 56 A. 999, 64 L. R. A. 685."

Again, we find that this court has held that the master is liable only for the acts of his servant committed in the course or scope of the latter's employment and not for the acts of the servant committed by him while not serving the master and outside of the scope of his employment. Hines v. Wall, 194 Ky. 379, 239 S. W. 451.

In further statement of the same general principle, we have declared that beyond the scope of his employment, the servant is as much a stranger to his master as any third person; and the act of the servant, not done in the execution of the service for which he was engaged, can not be regarded as the act of the master. Cincinnati, N. O. & T. P. R. Co., v. Rue, 142 Ky. 694, 134 S. W. 1144,

34 L. R. A., N. S., 200; Stewart v. Lafoe, 194 Ky. 655, 240 S. W. 57.

If the agent steps aside from the principal's business, for however short a time, to do acts not connected with such business, the relation of agency, and the agent is for that time suspended, and the agent is not acting within the scope of his employment. 3 C. J. S., Agency, sec. 255, p. 187.

Where the agent of a principal went to the house of a third party to obtain furniture under a writ of detinue for the principal, and while there the agent knocked the third party down in response to a contemptuous remark made by the third party, which remark had no connection with the taking of the furniture or executing the writ, it was held that the assault was committed outside the scope of the agent's authority. Hardeman v. Williams, 150 Ala. 415, 43 So. 726, 10 L. R. A., N. S., 653.

A store employee who, when at work, shot another employee with a gun which was in a store, was held not acting within the scope of employment so as to render the store owner liable therefor. An act is within the scope of the servant's employment, where such act is necessary to accomplish the purpose of his employment, and intended for that purpose, although in excess of the powers actually conferred on the servant by the master. Hough v. Leech, 187 Ark. 719, 62 S. W. 2d 14.

Where authority was given a landlord's son who was not a general agent of the landlord to ascertain the condition of landlord's premises and to request removal of a tenant if son deemed it advisable, the son's alleged assault and battery committed on the person of the tenant was held not to be conduct within the scope of his employment and hence the landlord was held not liable for injuries allegedly inflicted on the tenant by such agent. Hahn v. Owens, 176 Miss. 296, 168 So. 622, 623, 624.

To be within the scope of an employment, conduct must be of the same general nature as that authorized or incidental to the conduct authorized. De Parcq v. Liggett & Myers Tobacco Co., 8 Cir., 81 F. 2d 777, 780.

In determining whether an agent's act is within his scope of employment, so that the master is liable therefor, the question is whether the agent's conduct is so

unlike that authorized that it is substantially different. Hahn v. Owens, supra.

And now, in collating these authorities and principles, it seems clear to us that in order to hold an employer responsible to a third person for the tortious act of an employee of the former, such act must have been committed while the employee was engaged in furthering his employer's business or interests, without any deviation by the employee to a pursuit of his own business or interest, and there must have been a general similarity between the tortious act committed and the usual, ordinary, everyday acts commonly pursued by the employee in prosecuting the regular routine of his employment.

We cannot believe the assault of appellee's bus driver upon the appellant, not committed on a passenger of appellee nor within the confines of appellee's property or bus, was an act in furtherance of appellee's business or its interests in any conceivable way whatever. For appellee's bus driver to stop his bus in the middle of the street or highway before it reached the regular bus station, for him to alight from the bus at that time and place and walk over to appellant's place of business in order to curse and assault the latter because of a previous controversy between them over the right of way between vehicles on the highway, was, according to our view, a clearcut deviation of the bus driver from his routine of employment. And, still further looking at the bus driver's conduct on this occasion, we see no marked, or even faint, resemblance between the bus driver's fisticuffs, on the one hand, and the bus driver's customary duties of starting, guiding, stopping and safely operating appellee's busses, on the other hand, especially so in view of the fact that this assaulted appellant was not related to the bus driver's employer as a passenger, customer, employee or otherwise. This bus driver's attack and his usual bus driving employment bore no more similarity to each other than a plug horse bears to "Man O' War," according to our perspective of these two separate activities.

Thus, we see in the bus driver's conduct towards appellant the following: (a) An act not furthering the employer's business and (b) a deviation from the routine of the employment and (c) a dissimilarity between the

tortious act and the usual activity of the employment. These three apparent and fatal attributes of the bus driver's conduct on the occasion in question have all united in synchronized force to destroy the legal standing of appellant's complaint against the appellee.

And so having carefully considered appellant's petition and amended petition in every detail, we are led to the inevitable conclusion that no cause of action was stated by him against appellee and that accordingly the trial court committed no error in sustaining a general demurrer to such pleadings.

Wherefore, the judgment is affirmed.