JULY 6, 2018; 10:00 A.M. Discretionary Review Denied by Supreme Court March 6, 2019
BRIEFS FOR APPELLANT: Philip G. Fairbanks, M. Austin Mehr, Lexington, Kentucky.
BRIEF FOR APPELLEES, PJ OPERATIONS, LLC D/B/A PAPA JOHN'S KENTUCKY, AND PJ HOLDINGS KY, LLC: Edward H. Stopher, Raymond G. Smith, Louisville, Kentucky.
BRIEF FOR APPELLEE, PAPA JOHN'S INTERNATIONAL, INC.: Jane C. Higgins, Sarah E. Noble, Lexington, Kentucky.
BRIEF FOR APPELLEE, TONEY JONES: No brief filed.
BEFORE: DIXON, KRAMER, AND NICKELL, JUDGES.
OPINION
NICKELL, JUDGE:
Peyton Feltner ("Feltner"), as Administrator of the Estate of Earl Bransford Feltner ("Earl"), appeals from Perry Circuit Court orders entered August 25, 2016, and September 8, 2016, granting summary judgment to Papa John's International, Inc. ("Papa John's"), and PJ Operations, LLC d/b/a Papa John's Kentucky and PJ Holdings KY, LLC (collectively "PJ's"), and denying Feltner's motion for partial *3 summary judgment. Discerning no error, we affirm.
Toney Jones was a deliveryman for PJ's. On the way home after work, Jones' vehicle struck a pedestrian, Earl, who subsequently died. Earl's estate sued Jones, PJ's, and Papa John's alleging negligence; vicarious liability; negligent hiring, supervision, and retention; and franchisor liability.
Early in discovery, Papa John's moved for summary judgment to dismiss franchisor liability claims and itself as a party to the action but was denied. After conducting further discovery, including at least three depositions, Papa John's renewed its motion for summary judgment. PJ's also moved for summary judgment. Feltner moved for partial summary judgment, as well, on whether Jones was acting within the scope and course of his employment. After a hearing, and full briefing, the trial court granted summary judgment to Papa John's and PJ's, but denied Feltner's motion for partial summary judgment. These appeals followed.
As an initial matter, in contravention of CR[1] 76.12(4)(c)(v), which requires ample references to the trial court record supporting each argument, Feltner's briefs contain only two such references. These references are contained in the argument section, in footnotes serving as the statements of preservation of his arguments. This does not constitute ample citation to the record.
Failing to comply with the civil rules is an unnecessary risk the appellate advocate should not chance. Compliance with CR 76.12 is mandatory. See Hallis v. Hallis, 328 S.W.3d 694, 696 (Ky. App. 2010). Although noncompliance with CR 76.12 is not automatically fatal, we would be well within our discretion to strike Feltner's briefs or dismiss the appeal for failure to comply. Elwell v. Stone , 799 S.W.2d 46 (Ky. App. 1990). While we have chosen not to impose such a harsh sanction, we caution counsel such latitude may not be extended in the future.
On appeal, Feltner argues the trial court erred in denying him partial summary judgment and granting summary judgment to Papa John's and PJ's on the issue of whether Jones was acting in the course and scope of his employment at the time of the accident. While the timing and facts are not disputed, whether vicarious liability can be imposed, as a matter of law, is at issue and hinges on whether a valid exception to the well-established "going and coming rule" is applicable. Feltner further argues genuine issues of material fact preclude granting summary judgment on negligent hiring, supervision, and retention as well as franchisor liability claims.
Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56.03. An appellate court's role in reviewing a summary judgment is to determine whether the trial court erred in finding no genuine issue of material fact exists and the moving party was entitled to judgment as a matter of law. Scifres v. Kraft , 916 S.W.2d 779, 781 (Ky. App. 1996). A grant of summary judgment is reviewed de novo because factual findings are not at issue. Pinkston v. Audubon Area Community Services, Inc. , 210 S.W.3d 188, 189 (Ky. App. 2006) (citing Blevins v. Moran , 12 S.W.3d 698, 700 (Ky. App. 2000) ).
*4 Feltner's first argument concerns vicarious liability. Feltner concedes there are no genuine issues of material fact precluding summary judgment on this issue. Feltner contends Jones, despite having ended his shift and clocked out, was acting in the scope and course of employment at the time of the accident making PJ's vicariously liable.
Kentucky law is clear that to hold an employer responsible to a third party for the tortious act of it[s] employee, "such act must have been committed while the employee was engaged in furthering his employer's business or interests, without any deviation by the employee to a pursuit of his own business or interest...." Wood v. Southeastern Greyhound Lines , 302 Ky. 110, 194 S.W.2d 81, 83 (1946). If an employee deviates from the employer's business, for however short of a time period, to do acts which are not connected with the employer's business, the relationship is suspended and the employee is not acting within the scope of his employment. Id. at 83. (Citing 3 C.J.S. Agency, § 255 p. 187). As noted in Restatement (Third) of Agency § 7.07 (2006) :
(1) An employer is subject to vicarious liability for a tort committed by its employee acting within the scope of employment.
(2) An employee acts within the scope of employment when performing work assigned by the employer or engaging in a course of conduct subject to the employer's control. An employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer.
In Papa John's Intern., Inc. v. McCoy , 244 S.W.3d 44, 52 (Ky. 2008), our Supreme Court explained,
[I]f the servant "acts from purely personal motives ... which [are] in no way connected with the employer's interests, he is considered in the ordinary case to have departed from his employment, and the master is not liable." [W. Page Keeton, et al., Prosser and Keeton on the Law of Torts 505, 506 (5th ed. 1984) ]. This approach "conforms to the economic theory of vicarious liability ... because when the employee acts for solely personal reasons, the employer's ability to prevent the tort is limited." [ Patterson v. Blair , 172 S.W.3d 361, 369 (Ky. 2005) (citation omitted) ].
Collins v. Appalachian Research & Def. Fund of Kentucky, Inc. , 409 S.W.3d 365, 369-70 (Ky. App. 2012).
Feltner argues because "Jones' travel to and from work in a required vehicle was subject to the employer's control and was serving a purpose of the employer (i.e. bringing an instrumentality to use to make deliveries), he was within the scope of his employment." However, his argument fails.
Generally, commuting to and from the place where an employee regularly works is not deemed to arise out of and in the course of the employment as the hazards ordinarily encountered in such journeys are not incident to the employer's business. See Kaycee Coal Co. v. Short , 450 S.W.2d 262 (Ky. 1970). Furthermore, in the context of workers' compensation law, Kentucky courts have held:
[w]hen travel is a requirement of employment and is implicit in the understanding between the employee and the employer at the time the employment contract was entered into, then injuries which occur going to or coming from a work place will generally be held to be work-related and compensable, *5 except when a distinct departure or deviation on a personal errand is shown. (Quoting William S. Haynes, Kentucky Jurisprudence, Workers' Compensation , § 10-3 (revised 1990) ).
Olsten-Kimberly Quality Care v. Parr , 965 S.W.2d 155, 157 (Ky. 1998). See also [...] Black v. Tichenor , 396 S.W.2d 794 (Ky. 1965) ; Handy v. Kentucky State Highway Dep't , --- Ky. ----, 335 S.W.2d 560 (1960). Certainly, this matter does not involve workers' compensation issues. Nevertheless, we believe the same general principle applies with respect to the scope of employment.
Collins , 409 S.W.3d at 370.
Feltner asserts when travel is a requirement of employment an employee is within the course and scope of the job when going to and coming from work, citing Parr . However, Parr is factually and legally distinguishable from the case at bar. In Parr , a workers' compensation claimant, who was required to travel from her home-office directly to patient homes, was injured in an automobile accident on her return trip. Those facts allowed application of the service to employer exception to the going and coming rule. See Howard D. Sturgill & Sons v. Fairchild , 647 S.W.2d 796, 798 (Ky. 1983) ; Spurgeon v. Blue Diamond Coal Co. , 469 S.W.2d 550, 553 (Ky. 1971) ; Draper v. Railway Accessories Co. , 300 Ky. 597, 189 S.W.2d 934, 937 (1945) ; Brown v. Owsley , 564 S.W.2d 843, 844 (Ky. App. 1978). In this case, Jones did not work from home but was required to clock in and out of work at the store; he was neither allowed nor required to work from home. The only travel Jones was required to do was during his shift. Once Jones was relieved from his shift and clocked out he was at liberty to do as he pleased. These facts make the service to employer exception to the going and coming rule inapplicable.
The instant case is more similar factually and in application of the law to Keck's Adm'r v. Louisville Gas & Elec. Co. , 179 Ky. 314, 200 S.W. 452 (1918). That case held:
liability of the master for the negligence of the servant proceeds from the maxim, "Qui facit per alium facit per se." In other words, where the servant is acting for the master and in his stead, the effect is the same as if the act had been performed by the master in person. The test in every case is: Was the servant acting for his master or for himself? If he acts in the furtherance of his master's business, he acts for the master. If he acts in the furtherance of his own business or pleasure, he acts for himself. Applying these principles to the case under consideration, we find that Roach's working hours ended at 8 o'clock p. m. and the accident happened after that time. He was then at liberty from the service. In riding the motorcycle home, he used it solely for his own convenience, and not for the purpose of performing any duty which he owed to the company. Under these circumstances, he was acting for himself and not for the company, and the company cannot be held liable for his negligence. Nor does the fact that he was then using the company's machine with its knowledge and acquiescence affect the question. Under the best-considered authorities, the liability of the master does not turn on the fact that the servant was then using the master's property, but on whether he was using it in the furtherance of the master's business.
Id. at 453. The determinative factor for our purposes is not whether Jones was driving a vehicle required for employment at the time of the accident, as Feltner suggests, *6 but whether Jones was operating said vehicle in furtherance of PJ's business or his own. There is no evidence Jones engaged in activity that furthered PJ's business or its interests after he left the store. Therefore, the trial court did not err in finding Jones was not in the course and scope of his employment at the time of the accident. For this reason and because, as stated before, there was no material issue of fact precluding judgment on this issue as a matter of law, the trial court did not err in granting summary judgment to Papa John's and PJ's, nor in denying Feltner's motion for partial summary judgment.
Feltner's second series of arguments concerns negligent hiring, supervision, and retention claims separate and apart from vicarious liability claims. The distinction between these types of claims "being, 'respondeat superior' is based upon the employer/employee relationship and imposes strict liability, whereas claims of negligent hiring/retention focus on the direct negligence of the employer which permitted an otherwise avoidable circumstance to occur." Ten Broeck Dupont, Inc. v. Brooks , 283 S.W.3d 705, 734 (Ky. 2009).
In Grand Aerie Fraternal Order of Eagles v. Carneyhan , 169 S.W.3d 840 (Ky. 2005), the Supreme Court of Kentucky explained the origin of claims for negligent hiring, retention and supervision. These claims arise from the special relationship between the tortfeasor and the employer and are of two types: (1) negligent failure to warn and (2) negligent failure to control. Id. at 850-51. Feltner alleges claims based on negligent failure to control. In Carneyhan , the Court emphasized the negligent failure to control the person who caused the harm must be actual and, if exercised, would have meaningfully reduced the risk of harm that occurred. Id. The Court's review of the law is instructive.
The Second Restatement provides that a special relationship exists between master and servant only if the servant is using an instrumentality of the employment relationship to cause harm, i.e. , either the master's chattel or premises entered by virtue of the employment relationship. Restatement (Second) of Torts § 317 (1965). The proposed Third Restatement puts this requirement more succinctly: "Special relationships giving rise to the duty provided in [§ 41(a) ] include: ... (3) an employer with employees when the employment facilitates the employee's causing harm to third parties. " Restatement (Third) of Torts: Liability for Physical Harm § 41(b)(3) (Proposed Final Draft No. 1, 2005) (emphasis added). [...] Again, the common thread through the above-described employment relationships is that the employer has a real means of control over the employee which, if exercised, would meaningfully reduce the risk of harm. See Weaver v. African Methodist Episcopal Church, Inc. , 54 S.W.3d 575, 582-83 (Mo. Ct. App. 2001) ("Such limitations serve to restrict the master's liability for a servant's purely personal conduct which has no relationship to the servant's employment and the master's ability to control the servant's conduct or prevent harm.").
Id. at 852. There must be a causal relationship between the employment and the harm. It is unfathomable that either Papa John or PJ's could have prevented Jones from driving his own vehicle to his home, or anywhere else for that matter, after Jones clocked out and departed the premises. Under the facts of this case, there is no relationship between Jones' employment and the accident. The imposition of liability would serve to render the employer responsible for the personal conduct of *7 Jones, which it had neither the right nor opportunity to control. Id. at 851.
Pursuant to the standard articulated in Steelvest, Inc. v. Scansteel Service Center, Inc. , 807 S.W.2d 476 (Ky. 1991), we have examined the record to determine whether there is a genuine issue of material fact as to whether PJ's knew, or reasonably should have known: (1) Jones was unfit for the job for which he was employed, and, (2) whether his placement or retention in that job created an unreasonable risk of harm to Earl. Oakley v. Flor-Shin, Inc. , 964 S.W.2d 438, 442 (Ky. App. 1998). Because Feltner cannot demonstrate Jones' placement and retention in his job created an unreasonable risk of harm to Earl, there is no genuine issue of material fact precluding summary judgment in this case. Therefore, the issue of liability on those claims was properly disposed of via summary judgment.
Feltner's third argument concerns franchisor liability. The Supreme Court of Kentucky has held, "the franchisor is vicariously liable for the tortious conduct of the franchisee when it, in fact, has control or right of control over the daily operation of the specific aspect of the franchisee's business that is alleged to have caused the harm." McCoy , 244 S.W.3d at 47. Feltner's argument that Papa John's controlled and had the right to control the delivery of pizzas by its franchisees is very brief and incomplete. We will not search the record to construct Feltner's argument for him, nor will we go on a fishing expedition to find support for his underdeveloped arguments. "Even when briefs have been filed, a reviewing court will generally confine itself to errors pointed out in the briefs and will not search the record for errors." Milby v. Mears , 580 S.W.2d 724, 727 (Ky. App. 1979). Feltner failed to sufficiently demonstrate how either Papa John's or PJ's had control over Jones' tortious conduct; therefore, neither can be held vicariously liable. As such, the trial court did not err in granting summary judgment on the franchisor liability claims.
For the foregoing reasons, the orders of the Perry Circuit Court are AFFIRMED.
ALL CONCUR.

Kentucky Rules of Civil Procedure.