RENDERED:  NOVEMBER 12, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1297-MR

JOEY BROCKMAN, ADMINISTRATOR
FOR THE ESTATE OF JACOB
BROCKMAN; JOEY BROCKMAN,
AS PARENT OF JACOB BROCKMAN;
REGINA BROCKMAN, AS PARENT
OF JACOB BROCKMAN;
JOEY BROCKMAN, INDIVIDUALLY;
AND REGINA BROCKMAN,
INDIVIDUALLY                                                                          APPELLANTS


                    APPEAL FROM ROBERTSON CIRCUIT COURT
v.                  HONORABLE JAY B. DELANEY, JUDGE
                            ACTION NO. 18-CI-00012


CITY OF FALMOUTH AND
KENNETH BROCKMAN                                                                  APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  GOODWINE, K. THOMPSON, AND L. THOMPSON, JUDGES.

THOMPSON, L., JUDGE: Joey Brockman, Administrator for the Estate of Jacob Brockman, *et al.*, ("Appellants") appeal from an order of the Robertson Circuit Court granting summary judgment in favor of the City of Falmouth (collectively with Kenneth Brockman, "Appellees"). Appellants argue that the circuit court erred in concluding that there are no genuine issues of material fact and that the City is entitled to a judgment as a matter of law. For the reasons addressed below, we find no error and affirm the judgment on appeal.

## FACTS AND PROCEDURAL HISTORY

Appellee Kenneth Brockman ("Kenny") became employed by the City of Falmouth as a police officer in 2015. After completing his shift on the morning of March 21, 2017, he drove his personal vehicle, a pickup truck, from Falmouth to the Brockman family farm in Robertson County, Kentucky. Appellants Joey and Regina Brockman lived in a trailer on the farm with their two minor sons. Kenny is Joey's brother, and lived in a house across the street from Appellants.

When Kenny arrived at the farm, he was still wearing his police uniform and carrying his City-issued Glock service weapon and other equipment. When he exited his truck, he placed the loaded Glock either on top of or inside the truck's center console. He left the truck unlocked.

-2-

After exiting the truck, Kenny and his father stood approximately 25 feet away having a conversation. Unbeknownst to Kenny, Joey's four-year-old son Jacob entered Kenny's truck through the passenger door. Jacob fired Kenny's Glock pistol and was struck by the bullet. Tragically, Jacob died from the injury.

On May 10, 2018, Appellants filed the instant negligence action against the City of Falmouth alleging that the City breached a duty to Jacob proximately resulting in his death. The City then filed a third-party complaint against Kenny on September 10, 2018.

The matter proceeded in Robertson Circuit Court. On February 26, 2020, the City filed a motion for summary judgment arguing that Appellants could not prevail if the matter proceeded to trial and that the action should be dismissed. After hearing arguments on the motion, the circuit court entered an order on September 15, 2020, granting summary judgment in favor of the City on all claims. The court determined that the City cannot be held vicariously liable for Jacob's death because the incident occurred while Kenny was off duty and not acting within the scope of his employment; the City did not owe a duty to Jacob under an exception to the public duty doctrine because there was no special relationship between the City and Jacob; Appellants could not demonstrate that the City breached any duty; and the City's suspension of the "home fleet program," which allowed officers to drive police vehicles off duty, was not the proximate cause of

Jacob's death. Further, the court determined that the City was immune from liability under Kentucky Revised Statutes ("KRS") 65.2003. The Robertson Circuit Court sustained the City's motion for summary judgment and this appeal followed.

## ARGUMENTS AND ANALYSIS

Appellants argue that the Robertson Circuit Court erred in sustaining the City's motion for summary judgment. Citing *McDonald's Corporation v. Ogborn*, 309 S.W.3d 274, 291 (Ky. App. 2009), they assert that Kentucky law recognizes that an employer can be held liable for the negligent supervision of its employees. Appellants argue that contrary to the conclusion of the Robertson Circuit Court, there are facts in the record that would allow a jury to find that the City of Falmouth knew or had reason to know there was a risk of harm to individuals such as Jacob. They argue that the City created this risk. Appellants assert that but for the City's failure to satisfy its duty to supervise or train its employees with regard to safeguarding City-issued firearms and the resultant risk of which it was aware, Jacob would not have been fatally injured.

Appellants go on to argue that the City owed a duty of care to Jacob. This duty, they contend, derived from the fact that police officers are effectively on duty 24/7, and the duty was breached by the City's negligent failure to adequately train Kenny. They assert that the question of whether the risk of harm was

foreseeable should be left to a jury; that the City prioritized duty over safety; that Jacob's death would not have occurred but for the City's negligence; and that KRS 65.2003 does not insulate the City from liability.

The focus of Appellants' argument is their contention that the Robertson Circuit Court erred in concluding that Appellants could not prevail on their negligence claim if the matter proceeded to trial. The elements of negligence are 1) duty; 2) breach; 3) causation; and 4) damages. *Hayes v. D.C.I Properties-D KY, LLC*, 563 S.W.3d 619, 622 (Ky. 2018). Whether a duty exists is a question of law. *Id.* (citation omitted). Further, an employer can be held liable for the negligent supervision of its employees, but only if the employer had reason to know of the risk that the employment created. *McDonald's Corp.*, 309 S.W.3d at 291.

Appellants' causes of action fell under two theories of negligence: *respondeat superior* and the failure to properly train and/or supervise Kenny. In disposing of these issues, the Robertson Circuit Court determined that the City cannot be held vicariously liable for Jacob's death because the incident occurred while Kenny was off duty, and because Kenny was not acting within the scope of his employment when Jacob gained access to Kenny's firearm. The court also found that Appellants cannot assert a *prima facie* case against the City for

negligent hiring, training, or supervision because they cannot demonstrate that the City owed an affirmative duty to Jacob.

Having closely examined the record and the law, we find no error in these conclusions. Vicarious liability through the legal theory of *respondeat superior* holds an employer liable for the acts or omissions of its employee if those acts were in furtherance of the employer's business. *Feltner v. PJ Operations, LLC*, 568 S.W.3d 1, 5 (Ky. App. 2018). The test is whether the employee was acting for himself or his employer. *Id*. As noted by the circuit court, the employee was not acting within the scope of his employment if he deviated from the employer's business, however briefly. *Wood v. Southeastern Greyhound Lines*, 302 Ky. 110, 194 S.W.2d 81, 82-83 (Ky. 1946).

Kenny was not acting within the scope of his employment at the time of Jacob's death. It is uncontroverted that Kenny was not on duty at the time of the shooting. He was not driving his City-issued vehicle and was not engaged in the City's business when Jacob gained access to his firearm. Kenny was at his family's farm, off duty, and talking to his father when Jacob entered his unlocked personal vehicle. While it is true that Kenny was still wearing his police uniform, and the weapon that discharged the deadly shot was issued to him by the City, these factors do not overcome the reality that Kenny was not on duty and was not engaged in City business when Jacob gained access to Kenny's vehicle. Under

-6-

*Feltner* and *Wood*, *supra*, Kenny's participation in personal activities after his duty shift ended conclusively demonstrates that he was not acting within the scope of his employment when the shooting occurred.

Appellants also assert that the City owed Jacob a duty under an exception to the public duty doctrine, and that it breached this duty which proximately resulted in Jacob's death. The public duty doctrine provides that public officials and their agents owe a duty to the public at large rather than to individual citizens. *McCuiston v. Butler*, 509 S.W.3d 76, 79-81 (Ky. App. 2017). A duty to an individual arises only where a "special relationship" has been formed between a municipality or public employee and an individual. *Id.* at 80-81. Such a relationship may be found, for example, where a law enforcement officer takes a citizen into custody. *Id.* The burden rests with a plaintiff to demonstrate that the municipality or its agents owed a duty of care to an individual rather than to the general public. *Id.* at 80-82.

The public duty doctrine protects a public employee from suit for injuries caused by the employee's breach of a duty to the public at large. *Id.* at 79. Public officials and their employers are "not guarantors of public safety, and . . . do not have a duty of universal care to protect the general public from harm or accident." *Id.* at 80.

Appellants direct our attention to *Grand Aerie Fraternal Order of Eagles v. Carneyhan*, 169 S.W.3d 840 (Ky. 2005), wherein the Kentucky Supreme Court cited with approval the extra-jurisdictional case of *Marusa v. District of Columbia*, 484 F.2d 828 (D.C. Cir. 1973). In *Marusa*, the city was held to have breached a duty of reasonable care in training and supervision of a police officer who caused an off-duty injury with a service revolver. *Marusa*, however, is distinguishable from the instant facts in that the police officer in *Marusa* was highly intoxicated and intentionally used his weapon to inflict an injury. Kenny was not intoxicated and did not shoot his service weapon. Further, while the officer in *Marusa* was required to carry his service revolver at all times, *id.* at 831, the record demonstrates that Kenny was not required to carry his weapon at all times, but only to keep it available for access when off duty. The case of *McCrink v. City of New York*, 71 N.E.2d 419 (N.Y. 1947), also cited by Appellants, addressed a police officer's intentional shooting of a plaintiff's decedent. *McCrink*, like *Marusa*, is also distinguishable from the facts before us, as it involved a police officer intentionally discharging his weapon.

Appellants go on to argue that the City's breach of its duty to Jacob proximately caused Jacob's death. Causation, however, cannot be proven absent a showing that the City had a duty to Jacob under the special relationship exception to the public duty doctrine. *McCuiston*, *supra.* If no duty is owed to a plaintiff,

there can be no breach and thus no actionable negligence. *Ashcraft v. Peoples Liberty Bank & Trust Co., Inc.*, 724 S.W.2d 228, 229 (Ky. App. 1986). We agree with the circuit court that the City was not a guarantor of Jacob's safety, that no duty can be found under the exception to the public duty doctrine, and that Appellants could not prove breach and causation if the matter proceeded to trial.

Lastly, Appellants argue that the circuit court erred in concluding that KRS 65.2003, titled "Claims Disallowed," immunizes the City from liability under the facts before us. It states that,

> a local government shall not be liable for injuries or losses resulting from:
>
> . . .
>
> > (3) Any claim arising from the exercise of judicial, quasi-judicial, legislative or quasi-legislative authority or others, exercise of judgment or discretion vested in the local government, which shall include by example, but not be limited to:
> >
> > > (a) The adoption or failure to adopt any ordinance, resolution, order, regulation, or rule;
> > >
> > > (b) The failure to enforce any law;
> > >
> > > (c) The issuance, denial, suspension, revocation of, or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authorization;

(d) The exercise of discretion when in the face of competing demands, the local government determines whether and how to utilize or apply existing resources; or

(e) Failure to make an inspection.

Nothing contained in this subsection shall be construed to exempt a local government from liability for negligence arising out of acts or omissions of its employees in carrying out their ministerial duties.

The circuit court agreed with the City that KRS 65.2003 precludes the City's liability for any injuries resulting from the suspension of the "home fleet program," which had allowed officers to drive City-owned police cars while not on duty. The court found that Mayor Hinson's suspension of the program via an executive order fell squarely within subsection (3)(a), *i.e.*, "the adoption or failure to adopt any ordinance, resolution, **order**, regulation, or rule[.]" (Emphasis added.) Appellants assert that KRS 65.2003 does not apply to this case, which centers on the City's breach of duty, with the suspension of the home fleet program being only an ancillary issue.

Having determined that the Robertson Circuit Court properly found that the City had no duty to Jacob and thus breached no duty, this argument is moot.

-10-

## CONCLUSION

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Kentucky Rules of Civil Procedure (CR) 56.03. "The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). Summary judgment should be granted only if it appears impossible that the nonmoving party will be able to produce evidence at trial warranting a judgment in his favor. *Id*. "Even though a trial court may believe the party opposing the motion may not succeed at trial, it should not render a summary judgment if there is any issue of material fact." *Id*. Finally, "[t]he standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996).

When viewing the record in a light most favorable to Appellants and resolving all doubt in their favor, we conclude that the Robertson Circuit Court correctly found that there are no genuine issues as to any material fact and that the

-11-

City is entitled to a judgment as a matter of law. The City cannot be held vicariously liable for Jacob's death because the incident occurred while Kenny was off duty and not acting within the scope of his employment. The City also did not owe a duty to Jacob under the exception to the public duty doctrine because there was no special relationship between it and Jacob. Appellants could not demonstrate that the City breached any duty, and the City's suspension of the home fleet program was not the proximate cause of Jacob's death. For these reasons, we find no error and affirm the order of the Robertson Circuit Court granting summary judgment in favor of the City of Falmouth.

ALL CONCUR.

BRIEFS FOR APPELLANT:

James W. Morgan, Jr.
Covington, Kentucky

BRIEF FOR APPELLEE CITY OF FALMOUTH:

Jeffrey C. Mando
Covington, Kentucky